462 F.Supp. 21 (1978)
The KANSAS CITY SOUTHERN RAILWAY COMPANY
v.
GREAT LAKES CARBON CORPORATION.
No. 75-808C(2).
United States District Court, E. D. Missouri, E. D.
April 25, 1978.
John P. Emde, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., Robert E. Zimmerman, Robert K. Dreiling, Kansas City, Mo., for plaintiff.
*22 G. Carroll Stribling, Sr., W. W. Dalton, Fordyce & Mayne, St. Louis, Mo., Dickson R. Loos, Pope, Ballard & Loss, Washington, D. C., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court upon defendant's motion for summary judgment on a counterclaim. The plaintiff, The Kansas City Southern Railway Company (KCS), filed a claim for undercharges against the defendant Great Lakes Carbon Corporation (Great Lakes). Great Lakes filed a counterclaim for overcharges against KCS.
At the request of both parties, the district court referred the matter to the Interstate Commerce Commission for adjudication. With regard to the plaintiff's claim, the Administrative Law Judge found that KCS applied the lawful tariff, and that its interpretation of the tariff was correct. However, the rate assessed by KCS was found to be unjust and unreasonable. Great Lakes' interpretation of the tariff, the basis of the counterclaim, was found to be incorrect. The ICC affirmed and adopted the decision of the Administrative Law Judge. Neither party exercised its statutory right of appeal to the ICC or the United States Court of Appeals. Both parties agree that the primary claim has been resolved and is no longer at issue. Under that claim plaintiff is entitled to a judgment of Twenty Nine Thousand, Eight Hundred Ninety Eight Dollars, Thirty Two Cents ($29,898.32).
The Court must now determine whether the decision of the ICC on the counterclaim is binding. KCS claims that it is and the doctrine of res judicata applies as the decision of the ICC was final. Great Lakes asserts that the decision of the ICC is not binding because the issue was not within the primary jurisdiction of that agency, that the doctrine of res judicata is irrelevant, and that the Court may consider the matter de novo.
What is involved here are shipments of petroleum coke from Chaison, Texas to Steeltown, Texas. KCS, the carrier, billed Great Lakes, the shipper, according to rates set out in the Texas-Louisiana Freight Bureau Tariff. Tariffs are promulgated under the auspices of the ICC. In this tariff there is no specific rate stated between Chaison and Steeltown. Item 216 permits the shipper to apply either the rate from Chaison to Port Arthur or the rate from Chaison to Beaumont.[1] Item 70 of the tariff states that the lower of any two rates must apply.
Section 2 of the tariff sets out specific commodity rates for petroleum coke from Chaison to Port Arthur. It is applicable (as KCS claims) unless there is another and lower rate which is also applicable to the Chaison to Steeltown movement. Section 4 of the tariff provides rates from Chaison to Beaumont. This rate is lower than the rate in § 2. However, § 4 does not apply specifically to petroleum coke, but to "freight all kinds":
Rates referring hereto apply on FREIGHT ALL KINDS, consisting of a mixture of two or more commodities in the next phrase except as shown in NOTES 1 and 2 and as follows:
Column 1 rates are in cents per car and apply on ALL COMMODITIES.
Column 2 rates are in cents per car and apply on FREIGHT ALL KINDS and apply on import traffic. (emphasis added).
As "freight all kinds" is defined as a mixture of two or more commodities, a shipment consisting entirely of petroleum coke does not fall under the first paragraph of § 4. Great Lakes contends that the exception for all commodities plainly includes petroleum coke because the restriction that there be a mixture of two or more commodities does not apply. That is, the term "all commodities" includes shipment of a single commodity such as petroleum *23 coke. The ICC disagreed and found that the § 4 rate applicable to "all commodities" only applies to mixtures of two or more commodities, not shipments made entirely of petroleum coke.
The doctrine of primary jurisdiction determines whether a court or agency will initially decide a particular question. It is not an abdication by the court to the agency; rather it is a deferral. It is often invoked when the specialized knowledge of the agency is necessary for a more informed determination of the issue. However, as stated in 3 K. Davis, Administrative Law, § 19.01 at p. 5 (1958):
The principal reason behind the doctrine of primary jurisdiction is not and never has been the idea that "administrative expertise" requires a transfer of power from courts to agencies, although the idea of administrative expertise does to some extent contribute to the doctrine. The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts. Whether the agency happens to be expert or not, a court should not act upon subject matter that is peculiarly within the agencies' specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agencies' continuous regulation may become the victims of uncoordinated and conflicting requirements.
Questions involving complex technical fact situations are often within the primary jurisdiction of agencies. Those questions involving legal issues are within the primary jurisdiction of the courts. If an agency decides a legal issue, not within its primary jurisdiction, the court is not bound by its determination. In this case, if the application of the tariff is determined to be a legal issue the court is free to follow or disregard the decision of the ICC. On the other hand, if this tariff interpretation involves technical issues, the commissioner's decision must be followed.
In transportation cases, the specialized knowledge of the ICC is often necessary to interpret ambiguous terms of a tariff or determine the reasonableness of rates. When words in a tariff are used in a technical sense, or extrinsic evidence is necessary to determine their meaning, the primary jurisdiction of the ICC is invoked. Great Northern Railway Company v. Merchant's Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); U. S. v. Western Pacific Railroad, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). However, when words are used in an ordinary non-technical sense, involving only questions of law, the issue of tariff construction may be decided by the courts.
The terms to be construed here are "freight all kinds" and "all commodities". These words are used in an ordinary sense. Interpretation does not require the technical expertise of the ICC nor the gathering of extrinsic evidence. The opinion of the ICC is instructive:
The difficulty with the shipper's position lies in the fact that the lower freight-all-kinds rates in section 4 of the tariff applied to mixtures, not shipments of single commodities such as petroleum coke. Also the specific commodity rates in section 2 of the tariff did not alternate with other rates. Taken together, these provisions negate the shipper's arguments as to the applicability or violation of section 4 of the Act, and there was no violation of tariff circular 20 since only the rates in section 2 of the tariff were applicable to the traffic at issue. ICC Decision No. 36-406, (March 22, 1977).
In determining that the lower freight all kinds rate did not apply to shipments of single commodities the Administrative Law Judge did not draw on specialized knowledge of transportation matters. Extrinsic evidence was not gathered to aid an interpretation of the rates. Moreover, the purpose of the tariff is clear and may be construed without reference to underlying costs allocation factors. Louisville & Arkansas Railway v. Export Drum Co., 359 F.2d 311 (5th Cir. 1966).
*24 The District Court may clearly interpret these nontechnical terms. As to the issue of whether the freight all kinds rate applies, the commission does not have primary jurisdiction and its decision is not binding upon this Court. Thus, Great Lakes' counterclaim will be considered on its merits.
Section 2 of the tariff is clearly applicable to the shipments in question as it sets out specific rates for petroleum coke. However, section 4 sets out lower rates and should be applied if it is found to include shipments of petroleum coke alone.
Section 4 applies to shipments of "freight all kinds". That term is defined as a mixture of "two or more commodities" and in general does not include shipments of petroleum coke, a single commodity. However, § 4 contains an exception: Certain rates apply to "all commodities". At issue is whether "all commodities" is synonymous with "freight all kinds" and is limited to mixtures of two or more commodities as well. It is this Court's opinion that it is not.
If it were intended that § 4 rates were to apply only to "freight all kinds" there would be no need for an exception. Rules of statutory construction require that a word or phrase be interpreted to have some meaning if such an interpretation is reasonable. Burrow v. Finch, 431 F.2d 486 (8th Cir. 1970). Accordingly, the Court finds that the term "all commodities" is not the same as "freight all kinds" and includes shipment of petroleum coke. Thus, Great Lakes was overcharged and is entitled to summary judgment.
NOTES
[1] The item provides:

"Rates named in this tariff, as amended, applying on bulk shipments to Beaumont or Port Arthur, TX, for export on the KCS will also apply to Steeltown, TX, for export on the KCS."