**INF, LTD., Plaintiff,**

v.

**SPECTRO ALLOYS CORP., Defendant.**

**Civ. No. 4–86–705.**

United States District Court, D. Minnesota, Fourth Division.

Jan. 30, 1987.

---

Paul O. Taylor, West St. Paul, Minn., for plaintiff.

Harvey, Thorfinnson & Scoggin, Ross L. Thorfinnson & James R. Scoggin, Eden Prairie, Minn., for defendant.

ORDER

DIANA E. MURPHY, District Judge.

Plaintiff INF, Ltd., a Wisconsin corporation, brought this action in state court against Spectro Alloys Corp. (Spectro), a Minnesota corporation, seeking approximately $22,500 alleged to be due and owing under a tariff filed with the Interstate Commerce Commission (ICC). Defendant Spectro, asserting diversity and federal question jurisdiction, removed the case to this court. Spectro now asks the court to refer this dispute to the ICC so that it may exercise its primary jurisdiction over the issues raised.[1]

INF was formerly in the business of freight handling. Spectro is and was a manufacturer and distributor of metal products. In 1983 and 1984, INF made 124 shipments for Spectro, which paid the registered rates for steel or iron. Both parties apparently believed the steel or iron rates to be appropriate.[2] In December, 1984, INF ceased all operations on order from its parent corporation, which simultaneously filed for reorganization under Chapter 11 of the Bankruptcy Code. Auditors reviewing INF's records concluded that it had charged an incorrect rate. Rather than the

---

1. Spectro initially sought only a stay in this court to enable the ICC to act on any proceeding that the parties might bring before it. The parties now appear to agree that referral to the ICC is the appropriate action if there is primary jurisdiction.

2. Spectro submits the affidavit of INF's former president, who asserts that the rates charged were proper.

steel or iron rate, they believe INF should have charged a higher rate, that is, the rate for "freight, all kinds."

INF now seeks to collect $22,460.70 in "undercharges." Spectro denies that the rate charged was incorrect. In the alternative, it argues that INF lacked the authority to transport the commodity and assess tariff charges, that INF is estopped from collecting any additional charges, and that demanding additional payments is unreasonable. Spectro also asserts that this court may not properly consider these matters until the ICC has exercised its primary jurisdiction over them. Plaintiff denies that any of the issues in this case are properly within the ICC's primary jurisdiction.

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). "No fixed formula exists for applying the doctrine.... In every case the question is whether the reasons for the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* at 64, 77 S.Ct. at 165.

> [I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.... Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conference v. United States*, 342 U.S. 570, 574–575, 72 S.Ct. 492, 494–495, 96 L.Ed. 576 (1952). The doctrine has been of special importance in matters relating to transportation, and the Supreme Court has held that the ICC has primary jurisdiction over any matters that "raise issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulating scheme laid down by [the Interstate Commerce] Act." *Western Pacific Railroad*, 352 U.S. at 65, 77 S.Ct. at 166; *Iowa Beef Processors, Inc. v. Illinois Central Gulf Railroad Co.*, 685 F.2d 255, 259 (8th Cir.1982).

The threshold dispute between the parties concerns the applicable rate under the tariff. The ICC's specialized knowledge

> is often necessary to interpret ambiguous terms of a tariff or determine the reasonableness of rates. When words in a tariff are used in a technical sense, or extrinsic evidence is necessary to determine this meaning, the primary jurisdiction of the ICC is invoked..... However, when words are used in an ordinary non-technical sense, involving only questions of law, the issue of tariff construction may be decided by the courts.

*Kansas City Southern Railway Co. v. Great Lakes Carbon Corp.*, 462 F.Supp. 21, 23 (E.D.Mo.1978) (citations omitted) (construction of term "freight all kinds" not within primary jurisdiction of ICC), *aff'd*, 624 F.2d 822 (8th Cir.1980) (en banc), *cert. denied*, 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980); *see also Western Pacific Railroad*, 352 U.S. at 69, 77 S.Ct. at 167 (not all matters of tariff construction within primary jurisdiction of ICC). Spectro does not argue that the rates themselves are unreasonable or that the terms of the tariff are technical or understandable only by reference to extrinsic evidence.

Interpreting the meaning of the tariff in this case is well within the "conventional experience of judges." Were it the only issue in this case, referral to the ICC would be inappropriate. *Cf. Inman Freight Systems, Inc. v. Olin Corp.*, 807 F.2d 117, 119 (8th Cir.1986). Determining whether INF had operating authority to transport the commodities in question is a similarly non-technical task.

Spectro's equitable defenses raise a more challenging question, however. Spectro ar-

gues that even if the higher rate should have been charged, it would be an "unreasonable practice" for INF to demand payment for any undercharges given the circumstances of this case. Determining whether a carrier's practice is unreasonable is "the kind of determination that lies in the primary jurisdiction of the commission." *Seaboard Systems Railroad, Inc. v. United States*, 794 F.2d 635, 638 (11th Cir.1986) (citing *Nader v. Allegheny Airlines*, 426 U.S. 290, 304–05, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976)).

The ICC requires common carrier such as INF to file their tariffs. 49 U.S.C. § 10762(a)(1). Carriers may not charge more or less than the specified rate. 49 U.S.C. § 11903. "Deviation . . . is not permitted upon any pretext." *Louisville & Nashville Railroad v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). The ICC has traditionally refused to recognize equitable defenses to efforts to collect undercharges. *See Seaboard Systems*, 794 F.2d at 638. The courts have similarly held that equitable considerations "cannot justify a carrier's failure to collect authorized tariff charges, . . . nor can they be invoked as the basis for estoppel to collect such charges." *Illinois Central Gulf Railroad Co. v. Golden Triangle Wholesale Gas Co.*, 586 F.2d 588, 592 (5th Cir.1978), *quoted in Missouri Pacific Railroad Co. v. Rutledge Oil Co.*, 669 F.2d 557, 559 (8th Cir.1982).

The ICC does, however, have the authority to order carriers to cease violations of 49 U.S.C. § 10701(a). This statute requires that carriers' practices "must be reasonable." In the decision affirmed in *Seaboard Systems*, the ICC acknowledged its historic refusal "to order the waiver of undercharges based on carrier rate misquotations, because granting such relief might lead to intentional 'misquotations' by carriers seeking to discriminate in favor of particular shippers." 794 F.2d at 638. In light of "changed circumstances," however, the ICC held that it would be "an unreasonable practice" to permit belated collection of an undercharge where "there was no evidence that the carrier intentionally or knowingly undercharged, when waiving the undercharges was unlikely to encourage carriers to indulge in intentional discriminatory rate 'misquotations,' and when the shipper relied upon the carrier's continuing conduct in misleading the shipper as to the applicable rate under a confusing tariff." *Id.* The Court of Appeals approved this change of policy. *Id.*

In a recently adopted policy statement addressing a different but related problem, the ICC has stated that "the filed rate doctrine does not necessarily bar equitable defenses." ICC, Ex Parte No. MC–177, slip op. at 1 (October 14, 1986). *Cf. Inman Freight Systems, Inc. v. Olin Corp.*, 807 F.2d 117, 119–120 (8th Cir.1986) (distinguishing Ex Parte No. MC–177). The ICC's expressed concern in that case was carriers who quote and bill at negotiated rates lower than those filed and subsequently seek to recover the difference. The ICC rejected a proposed rule which would bind carriers to such negotiated but unpublished rates because of the statutory requirement that rates be published. Drawing upon its authority to "adapt [its] rules and practices to the Nation's needs in a volatile, changing economy," *American Trucking Assocs., Inc. v. Atchison, Topeka & Santa Fe Railroad Co.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847 (1967), the ICC found that in "particular circumstances it could be fundamentally unfair not to consider a shipper's equitable defenses to a claim for undercharges. . . . [The] filed rate doctrine was not intended to condone or reward carriers . . . where [their] actions may constitute fraudulent business practices." Ex Parte No. MC–177, slip. op. at 5.

While neither *Seaboard Systems* nor Ex Parte No. MC–177 is entirely on point, both indicate the ICC's intention to broaden the use of its authority to determine what is "reasonable." Proper concern for "promoting proper relationships between the courts and administrative agencies," *Western Pacific Railroad*, 352 U.S. at 63, 77 S.Ct. at 165, leads to the conclusion that this litigation should be stayed so that the ICC may determine whether INF's action is "unreasonable." Under the circumstances of this case, and in the context of the

changing legislative and regulatory scheme, this question should be referred to the ICC for the exercise of its primary jurisdiction.[3]

Accordingly, based on the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion to stay proceedings and refer this matter to the Interstate Commerce Commission is granted, and the question whether the actions of INF, Ltd. constitute an unreasonable practice is referred to the Interstate Commerce Commission.

2. The parties shall promptly take all actions necessary to place this question before the Interstate Commerce Commission.

3. The Clerk of Court shall deliver a copy of this order to the Interstate Commerce Commission.

---

**3.** The court's determination that the interpretation of the applicable tariff and the issue of operating authority are not within the ICC's primary jurisdiction does not, of course, presume that the ICC will not address these issues in reaching the question referred.