**OBSERVER TRANSPORTATION COMPANY, Plaintiff,**

v.

**SERVICE MERCHANDISE COMPANY, INC., Defendant.**

No. C–C–87–196–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 16, 1988.

William P. Farthing, Jr., Margaret Whiteside Smith, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for plaintiff.

Mark W. Merritt, Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

### PRELIMINARY STATEMENT

THIS MATTER is before the Court on Defendant's Motion to Stay Proceeding and to Refer Issues to the Interstate Commerce Commission ("ICC"), filed September 24, 1987. Defendant contends that the facts underlying Plaintiff's claims require referral of this case to the ICC, under the doctrine of primary jurisdiction, for a preliminary determination on the reasonableness of Plaintiff's claims. Specifically, Defendant asserts that the ICC should be called upon to evaluate the circumstances surrounding Plaintiff's claims and to render an administrative advisory opinion to this Court on the existence of equitable considerations which could arguably militate in Defendant's favor or could possibly bar

Plaintiff's claims. As will be explained more fully below, Defendant's Motion will be denied because this case does not appear to be a "negotiated rates" case and because in this case the benefits to be derived from referral will not significantly outweigh the substantial delay such referral will necessarily entail.

## THE PARTIES

Plaintiff, Observer Transportation Company ("Observer"), is a corporation organized and existing under North Carolina law. Observer is engaged in the business of motor vehicle transportation, colloquially known as "trucking." The ICC has granted Observer authority to operate as a motor common carrier, *see* 49 U.S.C.A. § 10102(14) (West Supp.1988) (definition of "motor common carrier"), and Observer may also have authority to operate as a motor contract carrier, *see id.* § 10102(15) (definition of "motor contract carrier").

Defendant, Service Merchandise Company, Inc. ("Service Merchandise"), is a corporation organized under Tennessee law and qualified to do business in North Carolina. Service Merchandise sells various consumer goods to the public through catalog showrooms located throughout the southeastern United States.

## BACKGROUND OF THE DISPUTE

At various times during the calendar years 1983, 1984, and 1985, Observer provided transportation services to Service Merchandise. Service Merchandise designated the goods to be transported by Observer and the destinations thereof. After Observer transported and delivered the goods to the designated destinations, Service Merchandise paid to Observer all of the amounts indicated on freight bills prepared by Observer.

On April 24, 1987, Observer filed a complaint in this Court alleging that Observer had undercharged Service Merchandise for the transportation services provided. Subsequently, on June 9, 1987, Observer filed a Verified Amended Complaint realleging that Observer had undercharged Service Merchandise on the shipments made in 1983, 1984, and 1985. Specifically, Observer alleges that Service Merchandise owes Observer $133,654.97 plus interest. This amount, according to Observer, is the difference between the amounts shown on the paid freight bills and the amounts that result from calculations using tariff rates on file with the ICC on the date of each shipment. According to Observer, the proper calculations were not performed at the time the freight bills were prepared because the goods shipped were misclassified.

## CONTENTIONS OF THE PARTIES

Service Merchandise contends that pursuant to the ICC's recent policy statement in *National Industrial Transportation League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates: Ex Parte No. MC-177*, 1986 Fed. Carr.Cas. (CCH) ¶ 37,284 (1986) [hereinafter *NITL—Petition to Institute Rulemaking*], this Court should stay the present suit and refer it to the ICC for an administrative determination on the reasonableness of Observer's undercharge claims.

Observer contends that this case should not be referred to the ICC because (1) the "filed rate doctrine" precludes the assertion of equitable defenses, (2) the reasonableness of the rates is not in issue, (3) the ICC's policy statement in *NITL—Petition to Institute Rulemaking*, 1986 Fed.Carr. Cas. (CCH) ¶ 37,284, is not binding on this Court, and (4) this case does not involve "negotiated rates" within the ICC's referral policy.

## ANALYSIS OF THE APPLICABLE LAW

In *Motor Carrier Audit & Collection Co. v. Family Dollar Stores*, 670 F.Supp. 644 (W.D.N.C.1987), this Court held that it was appropriate to refer a particular undercharge collection case to the ICC for an administrative determination as to whether under the circumstances of that case such an undercharge claim constituted an unreasonable practice. *Id.* at 649. Both parties to the present action have indicated that they are aware of this Court's decision in *Family Dollar*: Service Merchandise has cited to the case, and Observer, in what must be taken as a form of flattery, has "cut and pasted" into its reply memoran-

dum of law, without proper attribution or citation, a substantial portion of the *Family Dollar* opinion. Plaintiff's Reply Memo. at 8–10, *Observer Transp. Co. v. Service Merchandise Co., Inc.,* C–C–87–196–P (W.D.N.C. filed Dec. 18, 1987) ("borrowing" portions of *Family Dollar,* 670 F.2d at 644). The legal analysis in *Family Dollar* fairly sets out the historical and legal precedents that underlie the question of referral of undercharge cases to the ICC, now raised here, and, therefore, that analysis will not be repeated here. *Compare Motor Carrier Audit & Collection Co. v. Family Dollar Stores,* 670 F.Supp. at 645–650 *with Rebel Motorfreight, Inc. v. Southern Beverage Co., Inc.,* 673 F.Supp. 785, 787–790 (M.D.La.1987) (presenting legal and historical precedents in favor of referral but ultimately deciding against referral in favor of "filed rate" doctrine and stare decisis). Only two points need to be addressed to decide Defendant's Motion.

■ First, this case does not appear to be a negotiated rates case. Instead, it is an undercharge claims case arising from repeated misclassifications of the freight moved. In *INF, Ltd. v. Spectro Alloys Corp.,* 651 F.Supp. 1405 (D.Minn.1987), the court recognized that an undercharge case arising from misclassifications of freight did *not* come within the sort of policy concerns laid out by the ICC in *NITL—Petition to Institute Rulemaking. Id.* at 1407. The circumstances that were present in *Family Dollar,* which did implicate the policy concerns expressed in *NITL—Petition to Institute Rulemaking,* do not appear in the present case; there has been no reliable showing in this case that the undercharges resulted from negotiations. Service Merchandise has attempted to rebut Observer's assertion that this is not a negotiated rates case by offering the affidavit of Kenneth Schooley, traffic manager for Service Merchandise from June 1980 until February 1984. Schooley's affidavit states that in October 1983 he negotiated terms of carriage with Observer on behalf of Service Merchandise. Schooley Aff. at 1–2 *Observer Transp. Co. v. Service Merchandise Co., Inc,* C–C–87–196–P (W.D.N.C. filed Jan. 27, 1988). This showing, however, does not have much signifi-

cance in the present case. As Service Merchandise has pointed out in its Answer, there is a statutory three-year limitation on actions brought by common carriers to recover charges. 49 U.S.C.A. § 11706(a) (West Supp.1988). The negotiations Schooley refers to in his affidavit happened almost three and a half years before the filing of Observer's present lawsuit. Any claims Observer asserts for undercharges during October 1983 appear to be barred by the statute of limitations, and, therefore, Schooley's affidavit does not appear to have much relevance to the claims Observer will be able to pursue in this Court. Service Merchandise has also cited *INF, Ltd. v. Spectro Alloys Corp.,* 651 F.Supp. 1405 (D.Minn.1987), to support its position that referral is appropriate when misclassification of freight is involved. This Court disagrees with the conclusion reached in *Spectro Alloys.* Only "negotiated rates" cases properly should be referred to the ICC for a preliminary administrative determination on the possible existence of equitable considerations and defenses. Misclassifications, on the other hand, do not involve the concerns expressed by the ICC in *NITL—Petition to Institute Rulemaking,* 1986 Fed.Carr.Cas. (CCH) ¶ 37,284.

■ Second, this Court is now of the opinion that referral to the ICC may not be the most efficacious procedure in all "negotiated rates" cases. Referral, of course, requires the expenditure of additional time and resources. The only cases that should be referred to the ICC are those that present circumstances clearly demonstrating that equitable considerations should bar the undercharge claims. In some cases, however, it may appear that the shipper knowingly negotiated a rate below the filed rate, and, subsequently, did *not* use reasonable diligence to confirm that the lower negotiated rate was on file at the time of the freight shipment. *See Baldor Electric Co.—Petition for Declaratory Order,* No. MC–C–30019, slip op. at 9 (ICC Jan. 20, 1988) (Simmons, Comm., dissenting). The courts are clearly not empowered to grant to defendants equitable relief from the "filed rate doctrine" in the absence of an ICC determination on the issue of reasonableness, *Family Dollar,* 670

F.Supp. at 649. The courts, however, should consider before referring an undercharge case to the ICC whether the defendant will be ultimately entitled to an equitable defense. *Baldor Electric Co.*, No. MC–C–30019, slip op. at 9–10 (defendant should not be entitled to equitable relief from filed rate doctrine because defendant did not reasonably rely upon representations) (Simmons, Comm., dissenting). If it appears to a court that a particular defendant should not ultimately receive equitable relief, perhaps because of "unclean hands," then the court should not refer the undercharge case to the ICC. In the present case, Service Merchandise has presented weak assertions, at best, on its reasonable reliance upon Observer's alleged misrepresentations. These weak assertions are not sufficient to justify the added expense and delay necessarily entailed by referral; it simply appears that Service Merchandise will not ultimately receive equitable relief after an ICC determination on the issue of reasonableness.

CONCLUSION

NOW, THEREFORE, IT IS ORDERED that Defendant Motion to Stay Proceeding and to Refer Issues to the ICC is DENIED.