**OBSERVER TRANSPORTATION COMPANY, Plaintiff,**

v.

**SERVICE MERCHANDISE COMPANY, INC., Defendant.**

No. C–C–87–196–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Dec. 7, 1988.

William P. Farthing, Jr., Margaret Whiteside Smith, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for plaintiff.

Mark W. Merritt, Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

## I. PRELIMINARY STATEMENT

THIS MATTER is before the Court on Service Merchandise Company, Inc.'s Motion for Reconsideration and Motion to Amend Interlocutory Order, both filed June 20, 1988. Service Merchandise Company, Inc. ("Service Merchandise" or "Defendant") is seeking from this Court either (1) an order granting Defendant's prior request to refer this undercharge claims case to the Interstate Commerce Commission ("ICC"), which this Court previously denied, *Observer Transp. Co. v. Service Merchandise Co., Inc.*, 685 F.Supp. 120 (W.D. N.C.1988) (Potter, Ch. J.), or (2) an order amending *Observer Transportation*, 685 F.Supp. 120, to enable Defendant to take an immediate appeal to the United States Court of Appeals for the Fourth Circuit. For the reasons that follow, this Court shall deny Service Merchandise's Motion for Reconsideration and shall deny its Motion to Amend.

## II. BACKGROUND AND SUMMARY OF RELEVANT PROCEEDINGS

Observer Transportation Company ("Observer" or "Plaintiff") is a motor common carrier operating under a grant of authority from the ICC. In addition, Observer may have authority to operate as a motor contract carrier. Service Merchandise is a retailer of consumer goods. During the calendar years 1983, 1984, and 1985, Ob-

server provided transportation services to Service Merchandise. After Observer transported Service Merchandise's goods, Service Merchandise paid for the shipments by tendering to Observer the amounts indicated on freight bills prepared by Observer. *Observer Transp.*, 685 F.Supp. at 121. On April 24, 1987, however, Observer filed a complaint seeking to recover $50,535.39, plus interest, from Service Merchandise for undercharges that allegedly resulted from repeated misclassifications of the freight moved. On June 9, 1987, Observer filed a verified amended complaint that essentially realleged the same facts as the original complaint but increased the amount owed to $133,654.97, plus interest.

On June 30, 1987, Service Merchandise filed its answer, which contains, inter alia, two affirmative defenses: First, Service Merchandise claims that Observer is barred from receiving more than the amounts originally charged on the freight bills because Service Merchandise allegedly reasonably relied upon Observer's representations that the rates quoted and used for bill calculations were duly published and filed with the ICC; and, second, Service Merchandise alleges that Observer is a contract carrier, and, therefore, an enforceable contract of carriage, between Service Merchandise and Observer, arose from Observer's representations of the applicable rates and Service Merchandise's acceptance and payment of those rates.

On September 24, 1987, Service Merchandise filed a motion seeking to stay the present case and to refer it to the ICC, under the doctrine of primary jurisdiction, for an administrative determination on the existence of equitable considerations which could militate in Service Merchandise's favor or which could bar Observer's undercharge claims. During the months that followed, the parties filed various briefs and reply briefs on the issue of referral.

Service Merchandise argued in its supporting briefs that the present case involves "negotiated rates" and should be referred to the ICC pursuant to *National Industrial Transportation League—Petition to Institute Rulemaking on Negoti-*ated Motor Common Carrier Rates: Ex Parte No. MC–177, 1986 Fed.Carr.Cas. (CCH) Para. 37,284 (1986) [hereinafter *NITL—Petition to Institute Rulemaking* ], and this Court's prior decision in *Motor Carrier Audit & Collection Co. v. Family Dollar Stores, Inc.*, 670 F.Supp. 644 (W.D.N.C.1987) (holding referral to ICC to be appropriate procedure). Service Merchandise also offered an affidavit of Kenneth P. Schooley, a former Traffic Manager for Service Merchandise, to support its contention that this case involves negotiated, but unpublished, rates. *See Observer Transp.*, 685 F.Supp. at 122.

Observer argued in its opposing briefs that the present case should not be referred to the ICC because (1) the "filed rate" doctrine precludes the assertion of equitable defenses, (2) the reasonableness of the rates is not in issue, (3) the ICC's policy statement in *NITL—Petition to Institute Rulemaking*, 1986 Fed.Carr.Cas. (CCH) Para. 37,284, is not binding upon the courts, and (4) the present case does not involve unfiled "negotiated rates" within the ICC's referral policy. *See Observer Transp.*, 685 F.Supp. at 121.

This Court carefully read and considered all of the memoranda of law and exhibits offered by the parties on the issue of referral. In an order filed May 16, 1988, this Court denied Service Merchandise's motion for stay and referral to the ICC and held that referral to the ICC was not the proper procedure to pursue in this undercharge claims case because (1) the evidence in the record supplied by the parties did not establish to this Court's satisfaction that this case involves unfiled "negotiated rates," as contemplated in *NITL—Petition to Institute Rulemaking*, 1986 Fed.Carr.Cas. (CCH) Para. 37,284, and *Family Dollar Stores*, 670 F.Supp. 644, and (2) Service Merchandise provided weak evidence of its reasonable reliance upon Observer's alleged misrepresentations. *Observer Transp.*, 685 F.Supp. at 122–123. In reaching the first of the foregoing two conclusions this Court specifically distinguished the present case from *Family Dollar*, 670 F.Supp. 644, and specifically declined to follow the court's holding in *INF, Ltd. v.*

*Spectro Alloys,* 651 F.Supp. 1405 (D.Minn. 1987), which held that an undercharge case arising from repeated misclassifications of freight should be referred to the ICC for a preliminary administrative determination on the existence of equitable considerations. *Id.* at 1407–08. This Court formulated the second central conclusion of *Observer Transportation* after considering both the circumstances appearing in the record in this case and a recent dissenting opinion of one of the ICC's commissioners, *Baldor Elec. Co.—Petition For Declaratory Order,* MC–C–30019, slip op. at 9–10, 1988 MCC LEXIS 16 (ICC Jan. 20, 1988) (Simmons, Comm., dissenting), which suggested to this Court that the courts should circumspectly assess the underlying equities of all unfiled "negotiated rates" cases before referring such cases to the ICC for a preliminary administrative determination.

On June 20, 1988, Service Merchandise filed the two motions now pending before this Court: (1) Defendant's Motion For Reconsideration and (2) Defendant's Motion to Amend Interlocutory Order. On that same day, Service Merchandise also filed supporting memoranda of law and an affidavit of John P. James, Service Merchandise's current Director of Traffic.

On July 6, 1988, Observer filed a response in opposition to Service Merchandise's latest motions. In support of its response, Observer has also filed an affidavit of Joe F. Radovanic, Observer's General Manager. On July 18, 1988, Observer filed two supplemental responses to Defendant's motions.

Finally, on July 25, 1988, Service Merchandise filed a reply to Observer's responses.

## III. DEFENDANT'S MOTION TO RECONSIDER [1]

Service Merchandise argues that this Court made various purported errors in *Observer Transportation,* 685 F.Supp. 120, by failing to consider facts, applicable law, and argument. First, Service Merchandise asserts that this Court erred by allegedly excluding from its consideration Kenneth P. Schooley's affidavit, which purportedly establishes that this case involves negotiated, but unfiled, rates. Second, Service Merchandise asserts that the circumstances of the present case are equivalent to the circumstances present in *Family Dollar,* 670 F.Supp. 644. Third, Service Merchandise urges this Court to follow the court's holding in *INF, Ltd. v. Spectro Alloys,* 651 F.Supp. 1405 (D.Minn.1987) (holding that an undercharge case arising from repeated misclassifications of freight should be referred to the ICC). Fourth, and finally, Service Merchandise contends that this Court misinterpreted and misapplied Commissioner Simmons' dissent in *Baldor Electric Co.,* MC–C–30019, 1988 MCC LEXIS 16. This Court will briefly address each of these arguments.

### A. The Schooley Affidavit

■ This Court specifically rejects Service Merchandise's repeated assertions that this case involves unfiled "negotiated rates" as contemplated in *NITL—Petition to Institute Rulemaking,* 1986 Fed.Carr. Cas. (CCH) Para. 37,284, and *Family Dollar,* 670 F.Supp. 644. The evidence before this Court at the time *Observer* was decided did not, and does not, require a different result, and the evidence that the parties have recently submitted on the issue supports this Court's conclusion that this is not

---

1. At the outset, it should be mentioned that Defendant's critical dissection of *Observer Transortation Co. v. Service Merchandise Co.,* 685 F.Supp. 120 (W.D.N.C.1988), recalls to the undersigned's mind a famous scene in one of Shakespeare's plays:

> HAMLET:.... I will speak to this fellow.—
> Whose grave's this, sirrah?
> FIRST CLOWN: Mine, sir.
>  . . . .
> HAMLET: What man dost thou dig it for?
> FIRST CLOWN: For no man, sir.

> HAMLET: What woman, then?
> FIRST CLOWN: For none, neither.
> HAMLET: Who is to be buried in't?
> FIRST CLOWN: One that was a woman, sir, but, rest her soul, she's dead.
> HAMLET: How absolute the knave is! We must speak by the card, or equivocation will undo us.

W. Shakespeare, *Hamlet, Prince of Denmark* Act V, scene i, 11. 117–138 (reprinted in *Complete Works of Shakespeare* (3d ed. D. Bevington ed. 1980)).

an unfiled "negotiated rates" case implicating the policy concerns expressed in *NITL —Petition to Institute Rulemaking,* 1986 Fed.Carr.Cas. (CCH) Para. 37,284, and *Family Dollar,* 670 F.Supp. 644.

In *Observer Transportation,* this Court stated the following:

> Service Merchandise has attempted to rebut Observer's assertion that this is not a negotiated rates case by offering the affidavit of Kenneth Schooley, traffic manager for Service Merchandise from June 1980 until February 1984. Schooley's affidavit states that in October 1983 he negotiated terms of carriage with Observer on behalf of Service Merchandise. This showing, however, does not have much relevance in the present case. As Service Merchandise has pointed out in its Answer, there is a statutory three-year limitation on actions brought by common carriers to recover charges. The negotiations Schooley refers to in his affidavit happened almost three and a half years before the filing of Observer's present lawsuit. Any claims Observer asserts for undercharges during October 1983 appear to be barred by the statute of limitations, and, therefore, Schooley's affidavit does not appear to have much relevance to the claims Observer will be able to pursue in this Court.

*Observer Transp. Co.,* 685 F.Supp. at 122 (citations omitted). Service Merchandise contends that this Court misconstrued the statute of limitations and misused it as an exclusionary rule of evidence. As will be explained below, Service Merchandise's assertions on this point are entirely without merit.

Schooley's affidavit, in its entirety, states the following:

> Kenneth Schooley, being first duly sworn, states as follows:
>
> 1. I am a resident of Tennessee, of sound mind, over 18 years of age and have first-hand knowledge of the matters set forth in this affidavit.
>
> 2. I served as a traffic manager for Service Merchandise Company, Inc. from the period June 1980 to February 1984. During this period, I was responsible for negotiating the terms of carriage with the carriers that Service Merchandise used to transport its goods.
>
> 3. I negotiated the terms of carriage with Observer Transportation Company ("Observer") on behalf of Service Merchandise in October 1983. At that time, Bill Bennett of Observer agreed to carry our goods based on 20% off the rates and 40% off the minimums in Observer Tariff ICC OBSE 300A. We also agreed that the classification of the goods was freight all kinds (Class 70). After we reached this agreement, my understanding was that Observer would take appropriate steps to make the proper filing with the ICC to charge Service Merchandise these rates.
>
> 4. I have attached to this affidavit as Exhibit A the note I received from Bill Bennett that was attached to Observer Tariff ICC OBSE 300A dated October 10, 1983. This note set forth the 20% discount off the amounts listed in the tariff. My understanding is that Observer is now seeking to recover for alleged undercharges from Service Merchandise because the rates agreed upon and charged were never set forth in an appropriate filing with the ICC. I negotiated the charges set forth on Exhibit A with Mr. Bennett of Observer in good faith and these amounts were the amounts charged by Observer to Service Merchandise.

Schooley Aff., *Observer Transp. Co. v. Service Merchandise Co., Inc.,* C–C–87–196–P (W.D.N.C. filed Jan. 27, 1988). It is significant that Schooley does not state in his affidavit that the shipments hauled by Observer during the years 1984 and 1985 were under the terms he negotiated in October 1983; yet it is equally clear Observer will only be able to pursue undercharge claims for shipments that took place during 1984 and 1985. Notwithstanding Service Merchandise's assertions to the contrary, prior to deciding *Observer Transportation,* 685 F.Supp. 120, this Court repeatedly and carefully considered Schooley's affidavit and found that it was insufficient to establish that this is an unfiled "negotiated rates" case. In particular, this Court

found it to be very significant that Schooley failed to state that the shipments in 1984 and 1985 were made pursuant to *unfiled* negotiated rates that he arranged. Schooley does state in his affidavit that he believes Observer is now seeking to recover for alleged undercharges from Service Merchandise because the rates agreed upon and charged were never set forth in an appropriate filing with the ICC, yet he does not distinguish between shipments made in 1983 and shipments made in 1984 and 1985.

In short, this Court did not "exclude" Schooley's affidavit from its consideration of Service Merchandise's Motion for Referral to the ICC. Instead, this Court simply decided that the affidavit had *limited* relevance given that it referred to events which happened three and a half years before the filing of Observer's undercharge claim case. This Court did consider the affidavit but decided that it provided weak evidence—at best—on the issue of whether this is an unfiled "negotiated rates" case. Service Merchandise had the opportunity to put before this Court any evidence it could gather regarding the alleged unfiled negotiated rates. Other affidavits referring to events of more recent vintage might have helped considerably. Service Merchandise, however, failed to produce other affidavits and thereby failed to provide substantial evidence to this Court that this is an unfiled "negotiated rates" case. Instead, it merely provided Schooley's affidavit as the *only* evidence to establish that this is an unfiled "negotiated rates" case. This Court did not in any way intimate that the statute of limitations applicable to undercharge claims acted as a statutory rule of evidence barring the introduction of evidence of events occurring more than three years prior to the filing of an undercharge claims case, but this Court did hold that the affidavit was insufficient—and, therefore, of limited relevance—to establish that this is an unfiled "negotiated rates" case.

Service Merchandise vigorously argues that this Court unjustifiably assumed that the October 1983 negotiations resulted only in contemporaneous shipments and did not result in shipments during 1984 and 1985. When this Court construed Schooley's affi-davit it did not make any assumptions, one way or the other, and that is why this Court held that the affidavit had limited relevance to the present lawsuit. In order to find Schooley's affidavit to be significant, this Court *would have had to assume* that Schooley's October 1983 negotiations with Observer subsequently resulted in shipments made pursuant to *unfiled* "negotiated rates" during the years 1984 and 1985. Schooley's affidavit does not state that such shipments occurred, and, therefore, this Court held it had limited relevance on the issue of whether this is an unfiled "negotiated rates" case.

■ The parties have provided new affidavits in support of their positions vis-à-vis the true nature of this case. Service Merchandise has offered an affidavit of John P. James, Service Merchandise's current Director of Traffic, which simply states that he received a letter from Joseph F. Radovanic, dated September 17, 1984, and that such letter has been kept in Service Merchandise's files in the normal course of business. A copy of Radovanic's letter is attached to James' affidavit. Service Merchandise implies that Radovanic's letter, which refers to twenty percent discounts and the use of a specific freight classification, column 70, constitutes evidence that the rates negotiated by Schooley were not on file at the time the shipments were made that are the subject of Observer's present, non-time barred, claims. Observer has offered an affidavit of Joseph F. Radovanic, Observer's General Manager, which states, in pertinent part, the following:

1. I am and at all relevant times in this matter have been General Manager of Observer Transportation Company, the Plaintiff in this matter.

2. In that capacity, I am responsible for issuing all necessary Interstate Commerce Commission filed tariffs and supplements thereto.

3. The attached Exhibits A and B are accurate copies of *filed* supplements to Observer's filed ICC tariff ICC OBSE 300A which were issued by me and made effective on the dates indicated.

4. The attached supplements to Tariff 300A were applied to shipments tendered by the Defendant, Service Merchandise Company, Inc., in this matter.

Radovanic Aff., *Observer Transp. Co. v. Service Merchandise Co., Inc.,* C–C–87–196–P (W.D.N.C. filed July 6, 1988) (emphasis added).

This Court has carefully examined the copies of the filed supplements to ICC tariff ICC OBSE 300 A. The first supplement, Exhibit A, indicates that (1) it contains all changes to ICC OBSE 300 A, (2) it applies to shipments from or to points in Florida, Georgia, North Carolina, Ohio, South Carolina, Tennessee, and Virginia, and (3) it was effective January 17, 1984. Item 20 of the first supplement, Exhibit A, states, in pertinent part, the following:, "Rates and charges published in this tariff are to be reduced as follows:

|  | % of reduction |
| --- | --- |
| Rates ............... | 20 |
| Minimum Charges .... | 40 |

"To determine the applicable rate, first find the rate as published in section 1 and reduce that figure by the amount shown in this item."

Radovanic Aff., Exhibit A, *Observer Transp. Co. v. Service Merchandise Co., Inc.,* C–C–87–196–P (W.D.N.C. filed July 6, 1988).

It appears to this Court that all the evidence shows that the negotiations of the parties concerned the use of Plaintiff's filed ICC tariff, not some rate negotiated without reference to a tariff which everyone presumed, or were assured, was a filed tariff rate. Schooley's affidavit makes reference throughout to discussions concerning Plaintiff's rates and classifications under its ICC OBSE 300A tariff. It is true that Plaintiff instituted rate discounts in its ICC OBSE 300A tariff, but such rate discounts were filed and were available to all shippers.[2] Schooley states in his affidavit that the parties agreed that the classification of the goods was to be freight all kinds, (Class 70), but that classification referred to ICC OBSE 300A. It was this

misclassification under the filed tariff that gave rise to the present case.

In short, all of the evidence provided to this Court establishes that the parties had knowledge of and discussions about the application of rates and classifications in an existing ICC tariff; the freight was misclassified, and therefore Defendant paid less than it should have for the cargo tendered and shipped. The parties did not "negotiate" an unpublished rate through the use of offer, acceptance, and reliance. Observer is not now trying to avoid an ad hoc bargain. Therefore, this Court finds that Defendant's arguments regarding the Schooley affidavit and the nature of this case to be without merit.

*B. Defendant's Remaining Arguments*

■ Defendant has argued at length that the facts of the present case are analogous to the facts in *Motor Carrier Audit & Collection Co. v. Family Dollar Stores,* 670 F.Supp. 644 (W.D.N.C.1987). The circumstances in *Family Dollar,* however, fell squarely within the policy concerns of *NITL–Petition to Institute Rulemaking. Family Dollar* involved a contractually negotiated rate represented to be effective, which was not published in a filed tariff until after the shipments were made. In the present case, the parties simply agreed to ship cargo under an existing tariff, using the rates and the freight classifications contained within that existing *filed* tariff. The parties did not arbitrarily agree upon a rate or a classification that was not in a filed tariff. Thus, this Court will reject Defendant's assertions that the present case is analogous to *Family Dollar.*

Defendant has also repeatedly urged this Court to follow *INF, Ltd. v. Spectro Alloys Corp.,* 651 F.Supp. 1405 (D.Minn.1987). The court in *Spectro Alloys* specifically found that the ICC's policy concerns expressed in *NITL–Petition to Institute Rulemaking* did not directly apply to an undercharge case arising from misclassification of the freight moved. *Id.* at 1407. It is true that the *Spectro Alloys* court did go on to refer the case to the ICC, but this

2. *See* Radovanic affidavit.

Court has already specifically declined to follow the result in *Spectro Alloys*. Referrals made pursuant to *NITL–Petition to Institute Rulemaking* are limited to cases involving negotiated unfiled rates. This Court finds Defendant's arguments to the contrary are without merit.

In *Observer Transportation*, 685 F.Supp. 120, this Court held that a district court should assess the underlying equities in an undercharge case before deciding whether to refer such a case to the ICC. Defendant argues that such a procedure has never been required by the courts or the ICC. This Court, in addressing the question of referral, is making a discretionary determination. If a case is referred to the ICC, this Court will retain jurisdiction over the case and will ultimately decide whether any equitable defenses suggested by the ICC should be allowed. This Court is of the opinion that such a discretionary determination should be exercised circumspectly and not blindly. Although this Court has found that this case is not appropriate for referral because it does not involve unfiled negotiated rates, this Court also finds that Defendant has not provided sufficient evidence tending to establish that it reasonably relied upon the misclassifications of the freight moved. Defendant knew of the applicable filed tariff and was supplied with a copy of it. Under these circumstances, Defendant could have determined whether the proper freight classification was available and properly applied. Defendant, who had a traffic manager and was a significant shipper to its numerous retail stores, should never have tendered freight to Plaintiff without ensuring that the proper tariff classifications were available to it. The equities weigh against Defendant. This Court finds Defendant's arguments to the contrary to be without merit.

## IV. DEFENDANT'S MOTION TO AMEND INTERLOCUTORY ORDER

This Court has carefully considered Defendant's arguments in support of its motion to amend. This Court is of the opinion that this Court's order in *Observer Transportation Co. v. Service Merchan-dise Co. Inc.*, 685 F.Supp. 120, should not be amended to add language which will provide Defendant with an opportunity to seek an immediate appeal pursuant to Section 1292(b) of Title 28, United States Code. Such immediate appeal will not materially advance the ultimate termination of this litigation. Instead, an appeal at this stage would only prolong the proceedings.

## V. CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED that Service Merchandise Company, Inc.'s Motion for Reconsideration, filed June 20, 1988, is DENIED.

IT IS FURTHER ORDERED that Service Merchandise Company, Inc.'s Motion to Amend Interlocutory Order, filed June 20, 1988, is DENIED.