In re TUCKER FREIGHT LINES, INC., Debtor.

John WALTHOUT, Trustee for Tucker Freight Lines, Inc., Appellant,

v.

UNITED EXPOSITION SERVICE, INC., Appellee.

No. K87–176.
Bankruptcy No. HK 83–2391.
Adv. No. 85–0631.

United States District Court, W.D. Michigan, S.D.

April 14, 1988.

Rice, Rice, Gilbert & Marston by Kevin M. Ball, Grand Rapids, Mich., for appellant.

Muller, Muller, Richmond, Harms, Myers and Sgroi P.C. by William R. Farran, Grand Rapids, Mich., for appellee.

OPINION

ENSLEN, District Judge.

This matter is before the Court on plaintiff-appellant Walthout's appeal from an

order by Bankruptcy Judge Howard referring this matter to the Interstate Commerce Commission ("ICC"). Appellant, the trustee of Tucker Freight Lines, Inc. ("Tucker"), a common carrier, instituted this action on September 12, 1985 seeking recovery of freight bill undercharges. Between August 27, 1982 and October 6, 1983, Tucker provided various transportation services for defendant United Exposition Service, Inc. ("United"). Pursuant to 49 U.S.C. § 10762, Tucker had on file with the ICC lawful tariffs containing the lawful rates and charges applicable to the transportation services rendered to United. It is undisputed that Tucker charged, and United paid, less than the amount mandated by the tariff for those services. Tucker, now in bankruptcy, seeks payment of the undercharges, pursuant to 49 U.S.C. § 10761(a). United contends that it negotiated in good faith for the lower rate and that Tucker assured it that the lower rate would be filed with the ICC. However, Tucker never filed those tariffs with the ICC.

On September 12, 1985, the trustee commenced this action seeking $11,240.40 in undercharges from United. This figure represents the difference between the rates billed to and paid by United and the applicable tariff. On March 13, 1987, United sought and obtained an order from the bankruptcy court staying proceedings in the bankruptcy court and referring the matter to the ICC for determination of whether Tucker's collection of the undercharges would constitute an unreasonable practice under 49 U.S.C. § 10704(a). The trustee appeals from this order. Because the facts are undisputed, and because this appeal involves only questions of law, I review Judge Howard's decision de novo. *Rubenstein v. Ball Bros. Inc.*, 749 F.2d 1277 (9th Cir.1984).

### Discussion

■ As appellant is quick to point out, it has been the well-settled rule for nearly a century that tariff rates are strictly enforced and that equitable defenses are unavailable to shippers in an action by a common carrier to collect undercharges. In *Louisville & Nashville R.R. Co. v. Max-*

*well*, 237 U.S. 94, 98, 35 S.Ct. 494, 495–96, 59 L.Ed. 853 (1915), the Supreme Court stated this rule, now referred to as the filed-rate doctrine, and neither the Court nor Congress has since mandated a departure from it. In that case, the Court held:

Neither the intentional or accidental misstatement of the applicable published rate will bind the carrier or the shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed.... It was the purpose of the Act to have but one rate, open to all alike, and from which there could be no departure.

*Id.* at 98, 35 S.Ct. at 496. As the Seventh Circuit noted in *Western Transportation Co. v. Wilson & Co. Inc.*, 682 F.2d 1227, 1231 (7th Cir.1982):

... [C]ongress did not create a flexible standard for the courts to apply in accordance with the facts, equities and economic realities of the particular case. It forbade carriers to receive any different compensation from the rate in the applicable tariff. ... There is no judicial power of equitable reformation of tariffs as of ordinary contracts.

Cases acknowledging and applying this inflexible rule of law are legion, and no useful purpose could be served by citing them here.

In 1986, the ICC made an abrupt change in its policy regarding the strict enforcement of tariff rates. In light of the substantial deregulation of the common carrier industry accomplished by the Motor Carrier Act of 1980, the Commission determined that the rule prohibiting equitable defenses in cases involving negotiated rates was no longer strictly applicable. In *National Industrial Transportation League—Petition for Institute Rulemaking on Negotiated Motor Common Carrier Rates,* Ex Parte No. MC–177 (October 29, 1986), the ICC issued a policy statement indicating that it would now review undercharge cases to determine whether collection of the undercharge would constitute an unreasonable practice under 49 U.S.C.

§ 10704(a). Rather than abrogate the rule announced by the Supreme Court in *Maxwell*, the Commission indicated that it would, upon referral of a matter by a district court, "determine, based on all relevant circumstances, whether collection of undercharges based on the rate contained in the filed tariff would constitute an unreasonable practice and, if a negotiated rate is found to exist, whether this amount is all the carrier should be permitted to collect. The referring court would retain final authority to set the remedy, if any, and review our determination." MC–177 at 47,352.

In so holding, the Commission acknowledged that it "lacks initial jurisdiction to entertain challenges to the reasonableness of motor carrier rates charged in the past, or to order the waiver of undercharges." *Id.* The Commission held, however, that it had the authority, under the doctrine of primary jurisdiction, to "address the question of what rate should have been charged by a carrier ... if the carrier brings an action for undercharges in district court ... and the court refers the question of whether the collection of undercharges would be an unreasonable practice to us...." *Id.*

This policy statement has spawned a plethora of cases in the Circuit and District Courts requesting referral of undercharge cases to the Commission, or challenging an order referring such a matter to that agency. *See e.g., Inman Freight Systems Inc. v. Olin Corp.,* 807 F.2d 117, 119–20 (8th Cir.1986); *Seaboard System R.R. Inc. v. United States,* 794 F.2d 635 (11th Cir.1986) (approving similar policy statement regarding rail common carriers); *Western Transportation Co. v. Wilson & Co., Inc.,* 682 F.2d 1227, 1231–32 (7th Cir.1982); *In re Breman's Express,* 69 B.R. 356 (Bkrtcy.W. D.Pa.1987); *INF Ltd. v. Spectro Alloys Corp,* 651 F.Supp. 1405 (D.Minn.1987); *G.M.W. Inc. v. Flambeau Paper Corp.,* 623 F.Supp. 473 (W.D.Wisc.1985). Two more recent cases from district courts have denied referral to the ICC for application of its new policy statement, on the ground that the ICC did not have authority to waive the file-rate doctrine announced in *Maxwell. Motor Carrier Audit & Collection Co. v. United Food Service,* No. 87–C–298 (D.Colo. May 4, 1987) [available on WESTLAW, 1987 WL 19008]; *West Coast Truck Lines, Inc. v. Kaiser Aluminum & Chemical Co.,* No. C–87–0048 (N.D.Cal July 29, 1987) [available on WESTLAW, 1987 WL 46871].

Appellant argues vigorously that referral to the ICC is inappropriate in this matter, because the ICC does not have authority to vary from the filed-rate doctrine. Appellant argues further, that even if the ICC declared its collection action to be an unreasonable practice, the filed-rate doctrine would prevent this Court from denying collection of the undercharges. Thus, appellant concludes, referral is inappropriate and unnecessary in this action.

Appellant cites *Square D Company v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986), in support of his argument that courts are not free to deviate from the filed-rate doctrine. In that case, the Court affirmed *Keogh v. C. & N.W. Ry. Co.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), which held that treble damages were not available in antitrust actions against carriers even where the carrier conspired to fix rates in violation of the Sherman Act, since the rates had been approved by the ICC. Since rates charged by common carriers are fixed by law, the shipper cannot claim to have sustained damages from having to pay those rates. *Square D,* 476 U.S. at 415–16, 106 S.Ct. at 1925–26, 90 L.Ed.2d at 420–21. *Square D* affirmed *Keough,* while noting that the rule may have outlived its usefulness, on the ground that Congress had not chosen to overrule *Keough* in the Motor Carrier Act of 1980.

While appellant correctly states the holding in *Square D,* he misunderstands its application to the case at bar. In *Square D,* as in *Maxwell,* the rates strictly enforced by the Court were presumptively reasonable because they had been approved by the ICC. Therefore, collection of those rates was mandated by law. *Square D* had nothing whatever to say about rates deemed to be unreasonable, or the collection of rates deemed to be an unreasonable

practice, by the ICC. MC–177 contradicts neither *Square D* nor *Maxwell,* since it proposes not to waive the collection of undercharges on reasonable filed rates, but to hold that filed rates are unreasonable, thus allowing a district court to enjoin the collection of purported undercharges. *See, Western Transportation,* at 1231.

As appellant argues, 49 U.S.C. 10761(a) mandates the collection of tariff rates filed with the Commission, even where the carrier misquotes or affirmatively misrepresents the applicable rate to the shipper. *Consolidated Freightways v. Terry Tuck, Inc.,* 612 F.2d 465 (9th Cir.1980); *Sea-Land Service Inc. v. Sherman,* 528 F.Supp. 223 (W.D.Wa.1981). If this were all the statute had to say about tariff rates, then appellant's argument against referral to the ICC would make some sense, because neither the ICC nor the Court could enjoin collection of the published rate. However, 49 U.S.C. § 10704(a) mandates that tariff rates be reasonable. If a tariff rate is unreasonable, it violates the statute. *Western Transportation,* 682 F.2d at 1231. The ICC must "take appropriate action to compel compliance with the statute," 49 U.S.C. § 11701, and therefore may suggest that carriers not be allowed to recover unreasonable rates. *Id.* Only the ICC has the power to determine whether a tariff requirement or rate is unreasonable; the district court lacks statutory authority to do so. *Id.* at 1232. In such a situation, the appropriate judicial response is to refer the matter to the ICC for a reasonableness determination, to review that determination, and then grant the appropriate remedy. *Id.* at 1231; *Seaboard System,* 794 F.2d at 638–39, MC–177 at 47,352.

■ Appellant argues that this reasoning "begs the question," since rates in published tariffs are presumptively reasonable. This argument misunderstands the filed-rate doctrine. That doctrine relies on the assumption that filed rates are, in fact, reasonable. *See, e.g., Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.,* 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924) ("The amount of the freight charges legally payable was determined by applying [the] tariff rate ... [and] thus, they were fixed by law. No contract of the carrier could reduce the amount legally payable...."); *Keough,* 260 U.S. at 163, 43 S.Ct. at 49–50 (filed rates are presumptively reasonable and nondiscriminatory). This assumption was a valid one in the past since the ICC steadfastly refused to review filed rates under its "reasonableness" authority prior to the adoption of MC–177. But, in that policy statement, the Commission announced its intention, for the first time, to review filed motor carrier rates for reasonableness, and to determine whether collection of undercharges, in cases asserting the existence of a negotiated rate, would be an unreasonable practice under 49 U.S. § 10704(a). As the court pointed out in *Seaboard System,* "the courts have never held that the Commission lacks authority to prohibit the unreasonable collection of undercharges." 794 F.2d at 638. Instead, the ICC refused, in the past, to exercise that authority. *See, INF, Ltd. v. Spectro Alloys Corp.,* 651 F.Supp. 1405, 1407 (D.Minn.1987); MC–177 at 47, 350. It no longer refuses to do so, and in fact invites referrals to it for the purpose of determining whether collection of undercharges would constitute an unreasonable practice. *Id.* at 47,352. The filed-rate doctrine and the reasonable practices doctrine are both mandated by the statute, and while they may at times conflict, it is not for this Court or any other to place enforcement of one doctrine above the other.

■ Since it appears to this Court that the ICC does indeed have authority to determine whether collection of undercharges would be an unreasonable practice, the next question is whether the Court ought to refer this matter to the ICC for such a determination under the doctrine of primary jurisdiction. As the Supreme Court held in *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976):

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies." *United States v. Western Pacific R. Co.,* 352 U.S. 59, 63

[77 S.Ct. 161, 165, 1 L.Ed.2d 126] (1956). ... [I]t may be appropriate to refer specific issues to an agency for initial determination where that procedure would secure "[u]niformity and consistency in the regulation of the business entrusted to a particular agency" or where:

"the limited functions of review by the judiciary [would be] more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure. *Far East Conference v. United States,* 342 U.S. [570, 72 S.Ct. 492, 96 L.Ed. 576 (1952) ], at 574–575 [72 S.Ct., at 494].

*See also United States v. Western Pacific R.R. Co., supra,* at 64 [77 S.Ct., at 165].

The doctrine has been applied, for example, when an action otherwise within the jurisdiction of the court raises a question of the validity of a rate or practice included in a tariff filed with an agency, *e.g., Danna v. Air France,* 463 F.2d 407 (2d Cir.1972); *Southwestern Sugar & Molasses Co. v. River Terminals Corp.,* 360 U.S. 411, 417–18 [79 S.Ct. 1210, 1214–1215, 3 L.Ed.2d 1334] (1959), particularly when the issues involve technical questions of fact uniquely within the expertise and experience of an agency....

*Nader,* 426 U.S. at 303–04, 96 S.Ct. at 1986–87. *See also, United States v. Yellow Freight System, Inc.,* 762 F.2d 737, 741 (9th Cir.1985). Whether the primary jurisdiction doctrine requires the ICC to pass on the construction of a particular tariff's requirements "depends on whether the question raises issues of transportation policy which ought to be considered by the Commission in the interests of the regulatory scheme laid down by the Act." *Western Pacific,* 352 U.S. at 65, 77 S.Ct. at 166; *Yellow Freight,* 762 F.2d at 741.

■ Certainly the question of whether collection of undercharges constitutes an unreasonable practice is such a question. As the Commission pointed out in MC–177,

this is a determination which requires consideration of all the facts and circumstances regarding both the existence of the alleged negotiated rate and the reasonableness of allowing the carrier to collect undercharges. The policy statement itself creates a major change in previously settled law, and one which demands a uniform interpretation by the Commission. Moreover, as the court indicated in *Western Transportation,* only the ICC has jurisdiction to determine the reasonableness of a carrier's practices. 682 F.2d at 1232. *See also, Inman Freight Systems, Inc. v. Olin Corp.,* 807 F.2d 117, 119–120 (8th Cir.1986) (declining to refer matter to ICC where reasonableness of tariff is not in dispute). I conclude, therefore, that determination of whether collection of undercharges through this action is an unreasonable practice involves consideration of factual matters within the special expertise of the ICC. Referral of this question to that agency is, therefore, appropriate.

Appellant's final argument against referral is that the defendant-appellee has failed to produce any evidence indicating that the alleged negotiated rate actually existed. In *Robbins v. Nekooska Papers, Inc.,* No. G86–355 slip op. (W.D.Mich. August 28, 1986) [available on WESTLAW, 1986 WL 20752], I denied referral of a similar case to the ICC, partially on the ground that the defendant in that case failed to submit any evidence indicating that an issue of fact regarding the reasonableness of the carrier's practices existed. Appellant here argues that appellee has similarly failed to produce evidence of a negotiated rate and that referral is therefore improper.

I find *Nekooska Papers* inapposite for two reasons. First, the case was decided before the ICC issued its policy statement in MC–177. Second, the facts in this case, unlike those in *Nekooska Papers,* are virtually undisputed. As appellee points out, and as Judge Howard noted, appellant has never denied the existence of a negotiated rate between the debtor and appellee. I required evidence of a factual dispute in *Nekooska Papers* because the parties disagreed about the reasonableness of the challenged practice, and about whether the practice in fact existed. Here there ap-

pears to be no similar factual dispute. While evidence indicating the existence of an allegedly unreasonable practice may be required before the Court will grant a referral in some cases, it is not required in this case because there is no factual dispute regarding the existence of the challenged practice.

Therefore, because I believe that Judge Howard properly analyzed the legal issues before him, and because I believe that referral to the ICC is necessary to determine whether collection of the claimed undercharges would constitute an unreasonable practice, appellant's appeal from the Order of Referral is denied. Judge Howard's order granting a stay of proceedings and referring this matter to the ICC is affirmed.