In re CAMPBELL SIXTY SIX EXPRESS, INC., Debtor.

CAMPBELL SIXTY SIX EXPRESS, INC. and Delta Traffic Service, Inc., Plaintiffs,

v.

H.A. COLE PRODUCTS COMPANY, Defendant.

Bankruptcy No. 86–01697–S–1–11.
Adv. No. 88–0493–S–1–11.

United States Bankruptcy Court, W.D. Missouri.

Nov. 23, 1988.

Thomas J. Carlson, Springfield, Mo., for plaintiffs.

David K. McGowan, Jackson, Miss., for defendant.

ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS

KAREN M. SEE, Bankruptcy Judge.

Pending is the complaint of plaintiffs, debtor Campbell Sixty Six Express, Inc. and Delta Traffic Services, Inc., seeking damages from defendant H.A. Cole Products Co. for failure to pay freight charges owed to Campbell for services rendered. Defendant has filed a motion for summary

judgment. All parties have agreed there are no material facts in dispute and that plaintiffs' response to the motion for summary judgment shall be treated as a cross-motion for summary judgment.

Two issues are presented: 1) whether this case must be first referred to the Interstate Commerce Commission under the doctrine of primary jurisdiction, and 2) whether equitable defenses are available to this defendant in an action involving 49 U.S.C. § 10761.

## FINDINGS OF FACT

In July, 1986, Campbell and Delta entered into an agreement for Delta to audit Campbell's freight bills issued during the three years prior to April 14, 1986, the date Campbell's Chapter 11 bankruptcy was filed. The purposes of Delta's audit were (1) to determine whether freight bills had been properly rated according to the tariffs filed by Campbell with the ICC; and (2) to collect any balance due for improper tariff charges. This agreement was approved by the Bankruptcy Court on July 10, 1986.

Delta's audit revealed undercharges of $4,839.38 owed by defendant to Campbell. In addition to the undercharges, the audit revealed that defendant had failed to pay original invoices in the amount of $2,740.42.

In Count I of the complaint plaintiffs allege that between July 23, 1985 and April 9, 1986, Campbell transported a number of shipments in interstate commerce for defendant. Under a published tariff, in accordance with 49 U.S.C. § 10761, defendant was entitled to a 35% discount if it paid shipment charges within 15 days. Defendant did not pay within 15 days and to date has only paid the discounted amount.

Defendant denies that it was entitled to a 35% discount only on condition that payments were remitted within 15 days after invoice dates. In support of its contention defendant asserts estoppel and equitable defenses. First, defendant argues the agreement between the parties referenced Tariff No. 635, which makes no reference to any requirement that payments be made within 15 days in order to receive the dis-count. Second, defendant asserts Campbell has already accepted the discounted payments and prior to this time had not notified them of any deficiency in payments. Third, defendant argues it would be unconscionable to allow plaintiffs to profit from the collection of payments which were never contemplated by or contracted between the parties. Defendant requests that if this Court does not rule in defendant's favor, the matter be referred to the ICC.

In Count II, plaintiffs seek recovery for unpaid invoices. Defendant admits it owes $2,740.42 and plaintiffs have agreed to that amount. Therefore, judgment will be entered for plaintiffs on Count II for $2,740.42, with interest at nine percent per annum from the date of demand, June 9, 1986.

## CONCLUSIONS OF LAW

### A. PRIMARY JURISDICTION

The doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). "No fixed formula exists for applying the doctrine ... In every case the question is whether the reasons for the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* 352 U.S. at 64, 77 S.Ct. at 165.

The doctrine has been of special importance in matters relating to transportation, and the Supreme Court has held that the ICC has primary jurisdiction over any matters that "raise issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulating scheme laid down by [the Interstate Commerce] Act." 352 U.S. at 65, 77 S.Ct. at 166; *Iowa Beef Processors, Inc. v. Ill. Cent. Gulf R.R.*, 685 F.2d 255, 259 (8th Cir.1982).

Title 49 U.S.C. § 10704 conveys primary jurisdiction to the ICC to determine the

"reasonableness of rates, classifications, rules and practices observed or undertaken by transportation carriers." Title 49 U.S.C. § 10704; *In re Robinson Truck Lines, Inc.*, 89 B.R. 584, 586 (Bankr.N.D.Miss. 1988). Only the ICC has the power to determine whether a tariff requirement or rate is unreasonable. *In re Tucker Freight Lines, Inc.*, 85 B.R. 426, 429 (W.D. Mich.1988), *citing Western Transp. Co. v. Wilson & Co.*, 682 F.2d 1227, 1227–31 (7th Cir.1982). However, when the issue of reasonableness of rates or practices is not in question, the ICC's special expertise is not required. *Inman Freight Sys. Inc. v. Olin Corp.*, 807 F.2d 117, 119[1] (8th Cir.1986); *Distrigas of Massachusetts Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1117–18 (1st Cir.1982); *In re Carolina Motor Express, Inc.*, 84 B.R. 979, 987–88[6] (Bankr.W.D.N.C.1988) (if no dispute as to what the correct rates are, the bankruptcy court is fully capable of reviewing the application of the involved rates and deciding the amount owed by each defendant).

A decision contrary to the above cases was reached in *INF, Ltd. v. Spectro Alloys Corp.*, 651 F.Supp. 1405, 1406 (D.Minn. 1987). In *INF* the freight handler sued to collect undercharges after it was paid less than the proper published tariff. On defendant's motion to refer the dispute to the ICC, the District Court held that determining whether the freight handler could later charge a higher rate was a determination as to the "reasonableness" of its practices. The Court stated:

"[Defendant] argues that even if the higher rate should have been charged, it would be an 'unreasonable practice' for INF to demand payment for any undercharges given the circumstances of this case. Determining whether a carrier's practice is unreasonable is the 'kind of determination that lies in the primary jurisdiction of the commission'."

*Id.* at 1406, *citing Seaboard Systems Railroad, Inc. v. U.S.*, 794 F.2d 635, 638 (11th Cir.1986).

*INF*, 651 F.Supp. at 1407, recognized that most courts have dealt with the defense to a collection of undercharges as an equitable defense, an issue which has traditionally not been intertwined with the topic of primary jurisdiction. However, *INF* chose to deal with the issue by labeling the defense as an "unreasonable practice," thus bringing the matter within the primary jurisdiction of the ICC under 49 U.S.C. § 10704.

*INF* appears to be a questionable analysis under § 10704, the primary jurisdiction statute. Defendants in undercharge collection cases commonly raise equitable defenses. If every court were to view an argument based on "fairness" as an inquiry into the reasonableness of the freight handlers' practices, all cases of this nature would have to be referred to the ICC. All routine, small collection cases would have to be referred first to the ICC and for practical purposes, in a bankruptcy context, the cost of proceeding with such small cases would be prohibitive, so bankruptcy estates would be denied the opportunity to collect assets for distribution to creditors. To make the ICC a collection agency or a small claims court was not the intention of the primary jurisdiction statute. Judicial construction of the statute has made it clear that "[w]hen the alleged practice involves a violation of a filed rate (not the reasonableness of the rate itself) the courts and not the ICC have exclusive jurisdiction to determine and apply the proper charge." *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1370–71 (9th Cir.1985); *I.C.C. v. J.B. Montgomery, Inc.*, 483 F.Supp. 279, 281 (D.Colo.1980).

■ This court prefers to follow the Eighth Circuit opinion in *Inman*, which held that unless the issue before the court was the "reasonableness" of the tariff to be charged, the case need not be referred. The issue of whether an undercharge can be later collected under a correct tariff does not involve a determination of reasonableness of tariffs or practices which would require referral of the dispute to the ICC. The facts and legal questions in this case do not involve the reasonableness of any tariff or practice and, accordingly, this case should not be referred to the ICC.

## B. EQUITABLE DEFENSES

■ Title 49 U.S.C. § 10761(a) sets forth what is referred to as the "filed rate doctrine":

> Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under Chapter 105 of this title shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of the facility that affects the value of that transportation or service, or another device.

The Supreme Court has consistently held that carriers subject to the Interstate Commerce Act must collect, and shippers must pay, all lawful charges set forth in the applicable tariffs. *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 413, 106 S.Ct. 1922, 1925, 90 L.Ed.2d 413 (1986); In *Louisville & N.R.R. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915) the court stated:

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the *only* lawful charge. *Deviation from it is not permitted upon any pretext* [emphasis added].

In *Armour Packing Co. v. U.S.*, 209 U.S. 56, 81, 28 S.Ct. 428, 435, 52 L.Ed. 681 (1908), the court explained the rationale for the rigid rule of the filed rate doctrine:

> If the rates [filed and published as required by law] are subject to secret alteration by special agreement, then the statute will fail of its purpose to establish a rate duly published, known to all, and from which neither shipper nor carrier may depart.

The Supreme Court has applied this rule of law every time it has addressed the issue of adherence to lawful common carrier rates. *See, e.g., Thurston Motor Lines v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 534–35, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (carrier has absolute right to collect tariff charges on every shipment); *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343–44, 102 S.Ct. 1815, 1820–21, 72 L.Ed.2d 114 (1982) (equitable defense of carrier's violation of ICC credit regulations rejected); *Louisville & N.R.R. v. Central Iron & Coal*, 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900. (1924) (no contract of carrier can reduce the amount legally payable for transportation of freight in interstate commerce).

The filed rate doctrine is so absolute that a claim for relief from the filed rate based on a carrier's alleged fraudulent or intentional misquotation of rates has been rejected. *Consolidated Freightways Corp. v. Terry Tuck, Inc.*, 612 F.2d 465, 466 (9th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980) (counterclaim for fraud dismissed). *See also Missouri Pac. R. Co. v. Rutledge Oil Co.*, 669 F.2d 557, 559 (8th Cir.1982) (Interstate Commerce Act precludes shippers from asserting estoppel defense or detrimental reliance); *Paulson v. Greyhound Lines, Inc.*, 628 F.Supp. 888, 893 (D.Minn.), *aff'd*, 804 F.2d 506 (8th Cir.1986) (fraudulent guarantee of next day delivery not grounds for damages as next day service not contained in tariff).

An attempt was made to attack the strict requirements of the tariff laws in *Ex Parte No. MC–177, National Industrial Transportation League–Petition to Initiate Rulemaking on Negotiated Motor Common Carrier Rates*, 3 I.C.C.2d 99 (1986) (decided October 14, 1986, effective November 29, 1986). The rule proposed in that case would have provided that if a negotiated rate was paid in full, the carrier would be prohibited from later pursuing collection of undercharges. The Commission voted unanimously to reject the proposed rule, voting instead to adopt a policy statement to the requested effect. The policy statement advocates equitable defenses to the requirements of 49 U.S.C. § 10761(a). However, it should be noted that this is a non-binding policy statement which is contrary to years of judicial statutory construction. *See Hidden Liability For*

*Freight Bills* 43 Mo.Bar J. 175 (1987); *In re Carolina Motor Exp., Inc.*, 84 B.R. at 986. Further, as *Carolina Motor Exp., Inc.* stated, the policy statement is inconsistent with the statutory mandate of 49 U.S.C. § 10761(a) and is without a reasonable basis in law. *Id.*

In *Delta Traffic Service, Inc. and Oneida Motor Freight, Inc. v. Georgia–Pacific Corp.*, 684 F.Supp. 769, 771 (D.Conn.1987), the court concluded that such equitable defenses as those discussed in *Ex Parte No. MC–177* are statutorily barred. *See also In re Total Transp., Inc.*, 84 B.R. 590, 597 (D.Minn.1988). *Delta*, 684 F.Supp. at 770–71, further found that adhering to the filed rate doctrine has been consistently required regardless of the defense sought to be interposed. Furthermore, the court noted that when Congress rewrote the statutes governing interstate motor carriers it neither explicitly nor implicitly amended the law requiring strict adherence to the filed rate doctrine. *Delta* also noted that while the ICC is "free to change its policies, [it] is not free to change a clearly established rule of law." 684 F.Supp. at 771.

Further, *Inman*, 807 F.2d 117, 119–20 (8th Cir.1986), discussed the ICC's policy statement, stating:

[T]he ICC's new policy does not apply directly to this case. The ICC's statement specifically applies to cases in which the parties negotiate a rate, but such rate is not published. The parties do not argue here that a negotiated rate was unpublished but instead question the application of the lower published rate to the shipments in question. Accordingly, we do not refer this case to the ICC for possible application of its new policy.

As the case before this court involves the charging of published rates and applicable statutory discounts, as opposed to an unpublished negotiated rate, *Inman* is controlling.

In this case defendant has not alleged that the involved tariffs are unreasonable. Rather, defendant contends that up to this point plaintiffs have overlooked the undercharges and accepted payments of the discounted rates. Defendant further contends it reasonably relied on the rates as accepted by debtor. The court finds and concludes that even if defendant's reliance on the discounted rates was to be considered reasonable, the filed rate doctrine precludes the assertion of equitable defenses such as detrimental reliance, regardless of debtor's prior failure to collect deficient tariff charges.

Accordingly, it is hereby

ORDERED that plaintiffs' cross-motion for summary judgment is granted, and that judgment be entered in favor of plaintiffs and against defendant on Count I for $4,839.38 with interest at nine percent per annum from June 13, 1988, and on Count II for $2,740.42 with interest at nine percent per annum from June 9, 1986, together with costs.