**In re SOUTHWEST EQUIPMENT RENTAL, INC., d/b/a Southwest Motor Freight, Debtor.**

**C. Kenneth STILL, Trustee in Bankruptcy, Plaintiff,**

**v.**

**SALEM CARPET MILLS, INC., Defendant.**

Bankruptcy No. 1–88–00033.
Adv. No. 1–89–0110.

United States Bankruptcy Court, E.D. Tennessee.

July 28, 1989.

See also, D.C., 102 B.R. 132.

Robert G. Norred, Jr., of Patrick, Beard, & Richardson, Chattanooga, Tenn., Robert B. Walker, Joseph L. Steinfeld, Jr., and John Siegler of Sims, Walker, & Steinfeld, Washington, D.C., for plaintiff.

Bruce C. Bailey of Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, Tenn., for defendant.

MEMORANDUM

RALPH H. KELLEY, Chief Judge.

The defendant, Salem Carpet Mills, has filed a motion to refer this proceeding to the Interstate Commerce Commission (the ICC).

The plaintiff is the trustee in bankruptcy of Southwest Motor Freight. Before its bankruptcy, Southwest hauled cargo for Salem. The trustee's complaint alleges that Southwest charged and Salem paid a lower shipping rate than the applicable rate on file with the ICC. The trustee seeks to recover from Salem the undercharge—the difference between what Salem paid at the rate charged by Southwest and the amount it would have paid at the higher rate on file with the ICC.

The trustee relies on the filed rate statute, 49 U.S.C.A. § 10761 (West Pamph. 1989).[1] The filed rate statute says that the carrier shall charge and the shipper shall pay the rate on file with the ICC.

Over the years, the courts have interpreted the filed rate statute as allowing a shipper almost no defense to a suit to collect the filed rate. 13 Am.Jur.2d *Carriers*, §§ 108 & 109 (1964). In particular, the courts have held that the carrier's negotiation of a lower rate with the shipper is not a good defense for the shipper. *See, e.g., Louisville & N.R.R. v. Central Iron & Coal*, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924); *Fry Trucking Co. v. Shenandoah Quarry*, 628 F.2d 1360 (D.C.Cir.1980).

Recently, however, the ICC has decided that it can treat the collection of an undercharge by a carrier or a carrier's bankruptcy trustee as an unreasonable practice in interstate commerce. *National Industrial Transportation League—Petition to In-*

---

**1.** (a) Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the [ICC] ... shall provide the transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subsection....

(b) The [ICC] may grant relief from subsection (a) of this section to contract carriers when relief is consistent with the public interest and the transportation policy of section 10101 of this title....

*stitute Rulemaking on Negotiated Motor Carrier Rates*, 3 I.C.C.2d 99, 1986 Fed. Carr.Cas. (CCH) ¶ 37,284 (Ex Parte No. MC–177, Oct. 14, 1986).

The ICC has the authority to determine not only the reasonableness of shipping rates but also the reasonableness of carrier practices, and it can prohibit unreasonable practices. 49 U.S.C.A. §§ 10701(a) & 10704(a) (West Pamph.1989).[2]

The defendant asks that this proceeding be referred to the ICC for it to decide (1) whether collection of the alleged undercharges by the trustee would be an unreasonable practice, and (2) whether the shipping rates on file with the ICC were reasonable. This opinion deals first with the question of whether this proceeding should be referred to the ICC for it to determine if collection of the alleged undercharges would be an unreasonable practice.

### DISCUSSION

This kind of undercharge suit has become common. The shipper and the carrier negotiate a lower rate than the applicable filed rate, or the carrier at least quotes the shipper a lower rate. The shipper expects the carrier to file this negotiated rate with the ICC. The carrier never files the negotiated rate, but it completes the job, bills the shipper at the negotiated rate, and receives full payment at the negotiated rate. Later, the carrier files a bankruptcy case. The carrier or its trustee in bankruptcy then brings an undercharge collection suit against every shipper who was charged less than the filed rate, and almost every shipper files a motion for referral of the proceeding to the ICC. *See, e.g., In re Caravan Refrigerated Cargo*, 864 F.2d 388 (5th Cir.1989); *Inman Freight Systems v. Olin Corp.*, 807 F.2d 117 (8th Cir.1986); *In re Tucker Freight Lines*, 85 B.R. 426

(W.D.Mich.1988); *In re Silver Wheel Freightlines*, 86 B.R. 232 (D.Or.1986); *In re Campbell Sixty–Six Exp.*, 94 B.R. 1019 (Bankr.W.D.Mo.1988).

Some courts have held that undercharge suits involving negotiated rates should be referred to the ICC. They reason that the ICC has always had the authority to prohibit collection of undercharges as an unreasonable practice, and though the ICC has deferred and let the courts make all the law, the ICC can exercise its authority and may prohibit collection of the undercharge as an unreasonable practice in some cases. *See, e.g., Orr v. I.C.C.*, 703 F.Supp. 676 (W.D.Tenn.1988); *In re Tucker Freight Lines*, 85 B.R. 426 (W.D.Mich. 1988); *Motor Carrier Audit & Collection Co. v. Family Dollar Stores*, 670 F.Supp. 644 (W.D.N.C.1987); *In re Tobler Transfer*, 74 B.R. 373 (Bankr.C.D.Ill.1987). *See also, Seaboard System R.R. v. United States*, 794 F.2d 635 (11th Cir.1986) (question of which filed rate should apply when tariff was ambiguous and shipper relied on carrier's interpretation).

Note how this reasoning treats the filed rate statute. Under the court decisions interpreting the filed rate statute, the general rule is that facts X, Y, and Z do not give the shipper a defense to a suit to collect the filed rate; the carrier can collect and the shipper must pay the undercharge despite facts X, Y, and Z. Are these court opinions binding on the ICC as to the meaning of the filed rate statute?

"Yes" is the obvious answer, because interpretation of the filed rate statute is the courts' prerogative. See *Federal Maritime Board v. Isbrandtsen Co.*, 356 U.S. 481, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958); *Ithaca College v. NLRB*, 623 F.2d 224 (2d Cir.1980); *Orr v. I.C.C.*, 703 F.Supp. 676

---

**2.** A rate (other than a rail rate), classification, rule, or practice related to transportation or service provided by a carrier subject to the jurisdiction of the [ICC] ... must be reasonable.... 49 U.S.C.A. § 10701(a) (West Pamph.1989).

When the [ICC], after a full hearing, decides that a rate charged or collected by a carrier ... or that a classification, rule, or practice of that carrier, does or will violate this subtitle, the Commission may prescribe the rate ... classifi-

cation, rule, or practice to be followed. The Commission may order the carrier to stop the violation. When a rate, classification, rule, or practice is prescribed under this subsection, the affected carrier may not publish, charge, or collect a different rate and shall adopt the classification and observe the rule or practice prescribed by the Commission. 49 U.S.C.A. § 10704(a) (West Pamph.1989).

(W.D.Tenn.1989); *Delta Traffic Service v. Georgia-Pacific Corp.*, 684 F.Supp. 769 (D.Conn.1987). If the courts have held that facts X, Y, and Z do not give the shipper a defense, then the filed rate statute itself says that the carrier or its bankruptcy trustee can collect the undercharge despite facts X, Y, and Z.

This presents the problem squarely. When the ICC says that facts X, Y, and Z make collection of the undercharge an unreasonable practice and bars collection, the ICC is *not* disobeying a binding court interpretation of the filed rate statute. No, the ICC is saying that its authority to prohibit unreasonable carrier practices includes the authority to prohibit a practice—collection of the filed rate—even though the practice is required by the filed rate statute.

The court disagrees.

The general statute giving the ICC broad power to regulate should not control over the specific statute saying that the carrier must collect and the shipper must pay the filed rate, and in this regard, the court decisions interpreting the filed rate statute are the same as the statute itself.

The rule that the specific statute controls the general statute usually applies to statutes in different acts. 2A N. Singer, *Sutherland Statutory Construction,* ¶ 51.05 (4th ed. 1985). Nevertheless, the rule makes sense in this situation because the filed rate statute is a specific key rule in the regulatory scheme. Congress has given the ICC broad authority to regulate carrier practices, but Congress itself has enacted a key regulation—the rule that the filed rate controls.

In *Dismuke v. United States,* the Supreme Court made the obvious point that an administrator could not deny a claimant an annuity to which he was entitled by statute based on the facts found or admitted by the administrator. *Dismuke v. United States,* 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936), *reh'g denied,* 297 U.S. 728, 56 S.Ct. 594, 80 L.Ed. 1011 (1936). In *Meade Township v. Andrus,* the court of appeals struck down a regulation allowing payment in lieu of taxes to be made to the primary provider of government services

when the statute provided that it should be made to the smaller unit of government. *Meade Township v. Andrus,* 695 F.2d 1006 (6th Cir.1982). In *Regular Common Carrier Conference v. United States,* the court of appeals held that the ICC could not allow freight forwarders to operate under a filed tariff which was no tariff at all because shippers and carriers could not calculate rates based on the tariff. The court of appeals reasoned that this waiver of the filed rate requirement was beyond the ICC's authority because the filed rate requirement is central to the Interstate Commerce Act and the Act itself did not give the ICC specific authority to waive the requirement. *Regular Common Carrier Conference v. United States,* 793 F.2d 376 (D.C.Cir.1986). This case is not qualitatively different. The ICC under its general regulatory power cannot change a key rule established by statute. *See also Texas & P. Ry. v. I.C.C.,* 162 U.S. 197, 16 S.Ct. 666, 40 L.Ed. 940 (1896).

The Motor Carrier Act of 1980 in no way gave the ICC authority to change the statutory requirement that the carrier must collect and the shipper must pay the filed rate. Indeed, the Motor Carrier Act of 1980 inserted in the filed rate statute specific authority for the ICC to grant relief from the filed rate requirement only for contract carriers, not for common carriers. 49 U.S.C.A. § 10761(b). Having given the ICC statutory authority to grant relief from the filed rate statute for contract carriers only, Congress must be presumed to have decided that the other changes made in the law by the 1980 Act did not justify giving the ICC the authority to alter the operation of the filed rate statute between common carriers and their customers. *In re Caravan Refrigerated Cargo,* 864 F.2d 388 (5th Cir.1989); *Rebel Motor Freight v. Southern Beverage Co.,* 673 F.Supp. 785 (M.D.La.1987).

The court of appeals in *Caravan Refrigerated Cargo* pointed out that the Supreme Court has recently followed this same reasoning in holding that the Motor Carrier Act of 1980 did not compel abandonment of another long established interpretation of the Interstate Commerce Act. The Su-

preme Court reasoned that Congress must have been aware of the long-established rule when it passed the 1980 Act, and Congress, having refrained from specifically changing the rule, should not be presumed to have intended to change it. *In re Caravan Refrigerated Cargo*, 860 F.2d at 390–91 *quoting Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 106 S.Ct. 1922, 1928, 90 L.Ed.2d 413 (1985).

Likewise, the ICC has specific authority in § 10762 to depart from the statute's requirement as to how long a rate must be filed before it is effective. 49 U.S.C.A. § 10762(d) (West Pamph.1989). The ICC has used this authority to make a rule that a reduced rate becomes effective one day after filing. 49 C.F.R. § 1312.4(e) (1988); *Southern Motor Carriers Rate Conference v. United States*, 773 F.2d 1561 (11th Cir.1985). The reason for shortening the notice period appears obvious. The period was shortened so that carriers and shippers can negotiate lower rates for immediate shipping and still abide by the filed rate statute.

Thus, when Congress has wanted to allow the ICC to depart from a requirement clearly established by statute, Congress has included specific authority in the statute to depart from its requirements.

In summary, since the filed rate requirement is a key part of the regulatory scheme, and it is set by a specific statute, and the statute itself does not expressly give the ICC authority to vary the filed rate requirement, then the ICC's general power to determine the reasonableness of carrier practices does not give it authority to declare collection of the filed rate an unreasonable practice.

The Motor Carrier Act of 1980 allows another argument: since (1) the Act allowed negotiation of a rate other than the filed rate, then (2) the ICC has authority to prohibit collection of the filed rate as an unreasonable practice when the parties negotiate a lower rate. Number 2 obviously does not follow from number 1. Number 1 can be the basis for an argument on the merits that the filed rate statute now allows a defense based on the negotiation of a lower rate, but this is a question for the courts in interpreting the filed rate statute and does not mean the ICC has the power to declare collection of the filed rate an unreasonable practice.

Finally, the court sees no need for the ICC's expert assistance in determining what facts should give rise to a negotiated rate defense—if there is one. *Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1975); *United States v. Western Pacific R.R.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The ICC's primary jurisdiction to determine the reasonableness of carrier practices is irrelevant since collection of the filed rate, when it is required by the courts, cannot be an unreasonable practice.

The court concludes that there is no reason to refer these proceedings to the ICC. The ICC's authority to prohibit unreasonable carrier practices does not include the authority to prohibit collection of the filed rate when it is required by the filed rate statute, as interpreted by the courts. Since the court must have the final say by interpreting the filed rate statute, the ICC can not do anything to help. Referral to the ICC will be denied. *Accord, In re Caravan Refrigerated Cargo*, 864 F.2d 388 (5th Cir.1989); *Farley Transportation Co. v. Santa Fe Trail Transportation Co.*, 778 F.2d 1365 (9th Cir.1985); *Delta Traffic Service v. Georgia–Pacific Corp.*, 684 F.Supp. 769 (D.Conn.1987); *Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n*, 683 F.Supp. 1375 (N.D.Ga.1987) *appeal dismissed*, 849 F.2d 1389 (11th Cir.1988); *In re Silver Wheel Freightlines*, 86 B.R. 232 (D.Or.1986); *In re Campbell Sixty–Six Exp.*, 94 B.R. 1019 (Bankr.W.D.Mo.1988); *In re Robinson Truck Lines*, 89 B.R. 584 (Bankr.N.D.Miss.1988); *In re Carolina Motor Express*, 84 B.R. 979 (Bankr.W.D.N. C.1988).

The opposite view is very well stated as follows:

The courts have never held that the ICC lacks the authority to prohibit unreasonable collection of undercharges. Instead, the ICC has refused, in the past, to exercise that authority. The filed rate doctrine and the reasonable practices doctrine are both mandated by statute, and while they may at times conflict, it is not

for this court or any other to place enforcement of one doctrine above the other. They must be permitted a peaceful coexistence, with each controlling in its appropriate circumstances.

*In re Breman's Express Co.,* 92 B.R. 636, 643 (Bankr.W.D.Pa.1988). *Accord, Orr v. I.C.C.,* 703 F.Supp. 676 (W.D.Tenn. 1988); *In re Tucker Freight Lines,* 85 B.R. 426 (W.D.Mich.1988); *Motor Carrier Audit & Collection Co. v. Family Dollar Stores,* 670 F.Supp. 644 (W.D.N.C.1987); *In re Tobler Transfer,* 74 B.R. 373 (Bankr.C. D.Ill.1987). *See also Seaboard System R.R. v. United States,* 794 F.2d 635 (11th Cir.1986) (allowing ICC jurisdiction when shipper relied on carrier's interpretation of unclear filed rate).

This court can correctly be accused of giving the filed rate statute supremacy over the statute which allows the ICC to prohibit unreasonable practices. So be it. The court fails to see how a carrier practice required by the filed rate statute as a key method of enforcing the regulatory scheme can be declared an unreasonable practice.

The court will enter an order denying the motion to refer to the ICC for it to decide whether collection of the filed rate would be an unreasonable practice.

This leaves the question of whether to refer this proceeding to the ICC for it to determine the reasonableness of the filed rates. The defendant may renew the motion separately by filing a brief within thirty days. The brief should address the question of the procedure to be followed when the reasonableness of the filed rate is challenged in an undercharge collection suit. *See In re Caravan Refrigerated Cargo,* 864 F.2d 388 (5th Cir.1989); *Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n,* 849 F.2d 1389 (11th Cir. 1988), *aff'g* 683 F.Supp. 1375 (N.D.Ga. 1987).

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.