In re **SUBURBAN MOTOR FREIGHT, INC.,** Debtor. (Three Cases)

Stephen K. **YODER,** Trustee and Delta Traffic Service, Inc., Plaintiffs,

v.

**ELICON A. MICRODOT COMPANY,** Defendant.

Stephen K. **YODER,** Trustee and Delta Traffic Service, Inc., Plaintiffs,

v.

**PMS CONSOLIDATED, INC.,** Defendant.

Stephen K. **YODER,** Trustee and Delta Traffic Service, Inc., Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,** Defendant.

Bankruptcy No. 2–87–00822.
Adv. Nos. 2–89–0013, 2–89–0061 and 2–89–0076.

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 7, 1989.

Joseph L. Steinfeld, Jr., Robert B. Walker, Washignton, D.C., for plaintiffs.

Stephen K. Yoder, Bricker & Eckler, Columbus, Ohio, pro se.

James W. Muldoon, David M. Greim, Muldoon, Pemberton & Ferris, Columbus, Ohio, William J. Augello, Augello, Pezold & Hirshmann, P.C., Huntington, N.Y., for defendants.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

## I. *Preliminary Statement*

Several common legal issues have been raised in the above-captioned adversary proceedings by the parties' filing of the following motions: (1) defendants' Motion[s] for Transfer and Reference of Issues to the Interstate Commerce Commission ("ICC") and For Stay of Adversary Proceeding[s] (collectively, the "Referral Motion"); and (2) plaintiffs' motions to dismiss defendants' counterclaims (collectively, the "Dismissal Motion"). Jurisdiction is vested in the Court pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. The parties disagree as to whether these adversary proceedings constitute core matters. *See, generally,* 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (O); *United Sec. & Communications, Inc. v. Rite Aid Corp. (In re United Sec. & Communications, Inc.),* 93 B.R. 945 (Bankr.S.D.Ohio 1988). The parties have consented, however, to this Court's determination of the instant motions.[1]

## II. *Factual Background*

The debtor, Suburban Motor Freight, Inc. ("Suburban"), was formerly a motor common carrier which operated in interstate commerce under authority issued by the ICC. Suburban filed a case under Chapter 11 of the Bankruptcy Code with this Court on February 27, 1987. Suburban's Chapter 11 case was converted to a Chapter 7 liquidation proceeding on May 23, 1988. Delta Traffic Service, Inc. ("Delta") was employed by the estate to conduct an audit of Suburban's freight bills for the purpose of determining whether the bills had been paid and/or properly rated in accordance with the tariffs filed by Subur-

---

1. Both the Dismissal Motion and the Referral Motion were filed in *Stephen K. Yoder, Trustee and Delta Traffic Service, Inc. v. PMS Consolidated, Inc. (In re Suburban Motor Freight, Inc.),* Case No. 2–89–0061, and *Stephen K. Yoder, Trustee and Delta Traffic Service, Inc. v. General Motors Corporation (In re Suburban Motor Freight, Inc.),* Case No. 2–89–0076. However, because the defendant in *Stephen K. Yoder, Trustee and Delta Traffic Service, Inc. v. Elicon A. Microdot Company (In re Suburban Motor Freight, Inc.),* Case No. 2–89–0013, asserted no counterclaims against the Trustee, no Dismissal Motion was filed in that adversary proceeding. This Court's order shall dispose of the pending motions in all of these adversary proceedings.

ban with the ICC. The audit conducted by Delta has revealed that in a number of instances Suburban charged its customers less than the tariff rates which it had filed with the ICC. Stephen K. Yoder, the duly-appointed Chapter 7 trustee ("Trustee"), filed these lawsuits seeking recovery of such "undercharges"—*i.e.*, the difference between the negotiated rates paid by defendants and the tariff rates filed by Suburban with the ICC.

Defendants have raised a number of affirmative defenses and have counterclaimed against the Trustee, asserting that Suburban "induced reliance upon non-filed rates, negligently represented that the rates were filed or would be filed, negligently failed to file the rates or execute a written contract, ... negligently failed to discover that rates were not filed or contracts not executed, ... [and attempted] to retroactively impose unreasonable and unlawful rates in violation of 49 U.S.C. § 10701(a)." Memorandum Contra to Motion to Dismiss Defendant's Counterclaims at 2. Relying on the "filed-rate doctrine," [2] the Trustee argues that defendants' counterclaims are not legally cognizable and, therefore, subject to dismissal pursuant to Bankruptcy Rule 7012(b). Defendants, on the other hand, submit that collection of the filed rates rather than the quoted rates would constitute an unreasonable practice within the meaning of 49 U.S.C. § 10701(a), thereby requiring referral of these cases to the ICC under the doctrine of "primary jurisdiction." [3] The legal arguments advanced by the parties are examined below.

### III. *Legal Discussion*

The parties' motions raise two disputed legal issues:

(1) Does the doctrine of primary jurisdiction require referral of these cases to the ICC for a determination of whether collection of the undercharges would constitute an unreasonable practice under 49 U.S.C. § 10701(a)?; and

(2) Are defendants' counterclaims barred by the filed-rate doctrine?

As discussed below, these legal issues have spawned two divergent lines of federal case law.

A substantial minority of federal courts have declined to refer undercharge cases to the ICC. *See, e.g., Supreme Beef Processors, Inc. v. Yaquinto (Matter of Caravan Refrigerated Cargo, Inc.)*, 864 F.2d 388 (5th Cir.1989); *Rebel Motor Freight v. Southern Beverage Co.*, 673 F.Supp. 785, 789–90 (M.D.La.1987); *Feldspar Trucking Co., Inc. v. Greater Atlantic Shippers Associates, Inc.*, 683 F.Supp. 1375, 1378 (N.D. Ga.1987); *In re Taynton Freight Systems*, 76 B.R. 971, 973 (Bankr.M.D.Pa.1987); *Cooper v. California Consolidated Enter., Inc. (In re Carolina Motor Express, Inc.)*, 84 B.R. 979 (Bankr.W.D.N.C.1988); *Campbell Sixty Six Express, Inc. v. H.A. Cole Products Company (In re Campbell Sixty Six Express, Inc.)*, 94 B.R. 1019 (Bankr.W. D.Mo.1988). Adherence to the filed-rate doctrine is mandatory, these courts opine; hence, referral to the ICC would be a vain act. The filed-rate doctrine is derived from 49 U.S.C. § 10761(a) and judicial interpretations thereof. 49 U.S.C. § 10761(a) provides:

[A] carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transpor-

---

**2.** *See* discussion, *infra*, at 890–91.

**3.** Primary jurisdiction is a judicial doctrine "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R.R.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956); *Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). The doctrine

applies when a court must decide issues "which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Western Pacific*, 352 U.S. at 64, 77 S.Ct. at 165. If the doctrine applies, the proper course is for the court to suspend the action "pending referral of such issues to the administrative body for its views." *Western Pacific*, 352 U.S. at 64, 77 S.Ct. at 165.

tation or service than the rate specified in the tariff. . . .

49 U.S.C. § 10761(a). The Supreme Court explained the filed-rate doctrine in the following manner:

The rate of a carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it. . . . Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. The rule is undeniably strict, and it may work hardship in some cases, but it embodies the policy which has been adopted by Congress in regulation of interstate commerce in order to prevent unjust discrimination.

*Louisville & Nashville Ry. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *Southern Pacific Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982).

Thus, the *ratio decidendi* of the decisions in which referral of an undercharge case to the ICC was denied is that, even if the ICC would determine that collection of undercharges constitutes an unreasonable practice as defined in 49 U.S.C. § 10701(a), courts remain bound by statute and Supreme Court precedent to compel payment of the filed rate. By this reckoning, then, referral to the ICC would be a futile gesture. *See In re Total Transp., Inc.*, 84 B.R. 590 at 595 (D.Minn.1988). Courts following this minority view also hold that the filed-rate doctrine precludes assertion of equitable defenses and counterclaims. *See, e.g., Delta Traffic Serv., Inc. v. Georgia-Pacific Corp.*, 1988 Fed.Carr.Cas. (CCH) ¶ 58,181 (D.Conn.1988); *Campbell Sixty Six Exp., Inc.*, 94 B.R. at 1022-23.

The majority of courts take the contrary position, holding that, where an "unreasonable practice defense"[4] is raised in an undercharge action, referral of the dispute to

the ICC is proper. *See, e.g., Seaboard System R.R., Inc. v. United States*, 794 F.2d 635 (11th Cir.1986); *Maislin Indus. & U.S., Inc. v. Primary Steel*, 879 F.2d 400 (8th Cir.1989); *Motor Carrier Audit Collection Co. v. Family Dollar Stores, Inc.*, 670 F.Supp. 644, 649-50 (W.D.N.C.1987); *Indiana Harbor Belt R.R. Co. v. Industrial Scrap Corp.*, 672 F.Supp. 1041, 1042 (N.D.Ill.1986); *Delta Traffic Service, Inc. v. Marine Lumber Co.*, 683 F.Supp. 754, 755 (D.Or.1987); *Walthout v. United Exposition Service, Inc. (In re Tucker Freight Lines, Inc.)*, 85 B.R. 426 (W.D. Mich.1988); *Breman's Express Co. v. H & H Distributing Co. (In re Breman's Express Co.)*, 69 B.R. 356, 369 (Bankr.W.D. Pa.1987); *Tobler Transfer, Inc.*, 74 B.R. 373, 377 (Bankr.C.D.Ill.1987). This line of authority relies heavily upon the ICC's decision in *National Indus. Transp. League—Petition to Institute Rulemaking on Negotiated Motor, Carrier Rates, Ex Parte No. MC-177*, 3 I.C.C.2d 99, 1986 Fed.Carr.Cas. (CCH) ¶ 37,284 (1986) ("*MC-177*"). Prior to its decision in *MC-177*, the ICC had not permitted shippers to raise equitable defenses to undercharge collection actions. However, in *MC-177*, the Commission announced its intention to review filed motor carrier rates for reasonableness, and to determine whether collection of undercharges in cases asserting the existence of a negotiated rate, would constitute an unreasonable practice under 49 U.S.C. § 10704(a). The Commission stated:

[T]he Commission lacks initial jurisdiction to entertain challenges to the reasonableness of motor carrier rates charged in the past, or to order the waiver of undercharges. However, this does not mean that we lack authority to address the question of what rate should have been charged by a carrier (the tariff rate, the negotiated rate or some other rate) if the carrier brings an action for undercharges in district court, 49 U.S.C. §§ 10705(b)(3), 11706, and the court re-

---

**4.** The unreasonable practice defense is predicated on 49 U.S.C. § 10701(a), which states:

A rate . . ., classification, rule, or practice related to transportation or service provided by a carrier subject to the jurisdiction of the

Interstate Commerce Commission . . . must be reasonable. Parties asserting this defense argue that collection of the filed tariff rate rather than the quoted rate would be unreasonable.

fers the question of whether the collection of undercharges would be an unreasonable practice to us under the doctrine of primary jurisdiction.

*MC–177,* 1986 Fed.Carr.Cas. at 47,352. The ICC explained its change in policy in the following manner:

> In our view, the filed rate doctrine was not intended to condone or reward carriers in the circumstances involved here, especially where carrier actions may constitute fraudulent business practices.
>
> . . . .
>
> We believe, in the highly competitive motor carrier industry and economy in general, equitable defenses to rigid application of filed tariff rates should be available on a case-by-case basis and that our unreasonable practice jurisdiction authorizes such an approach. . . .

*MC–177,* 1986 Fed.Carr.Cas. at 47,350–47,-351. The majority of courts, then, rely upon the ICC's opinion in *MC–177* and refer undercharge cases to the ICC under the following two-pronged analysis:

(1) the ICC has authority under 49 U.S.C. § 10704(a) to determine whether collection of undercharges would constitute an unreasonable practice; and

(2) because a reasonableness determination involves consideration of matters within the special expertise of the ICC, referral is appropriate.

The Eighth Circuit's recent decision in *Maislin* is representative of the majority approach. After extensively analyzing the *MC–177* decision, the Circuit Court stated:

> Section 10761(a), which mandates the collection of tariff rates, is only part of an overall regulatory scheme administered by the ICC, and there is no provi-sion in the Interstate Commerce Act elevating this section over section 10701, which requires that tariff rates be reasonable. When conflicts between the two provisions arise, "it is not for * * * [courts] to place enforcement of one doctrine above the other." *In re Tucker Freight Lines,* 85 Bankr. at 429. Instead, the proper authority to harmonize these competing provisions is the ICC. *Seaboard,* 794 F.2d at 638. The approach taken by the ICC does not abolish the filed rate doctrine, but merely allows the ICC to consider all of the circumstances, including equitable defenses, to determine if strict adherence to the filed rate doctrine would constitute an unreasonable practice.
>
> . . . .
>
> Thus, the . . . court is required to enforce the tariff provisions of section 10761(a), unless the ICC, upon referral by the district court, determines that a carrier's billing practices were unreasonable and that to enforce the tariff requirement would be unlawful.

*Maislin,* 879 F.2d at 405. Thus, the *Maislin* court concluded that *MC–177* as well as federal case law authority established the propriety of referring undercharge cases to the ICC where an unreasonable practice defense is raised.

Having reviewed the two lines of authority discussed above, as well as the arguments of the parties asserted in their briefs, the Court hereby adopts the majority view. In the interest of judicial economy, the Court will not fully restate the rationale of these cases. Suffice it to say, however, that the Court fully concurs with both the analysis and the holding of the Eighth Circuit in *Maislin.*[5]

---

5. On June 14, 1989, the ICC issued a decision which reopened *MC–177* and clarified several of its statements therein. *See National Industrial Transportation League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates: Ex Parte No. MC–177,* 5 I.C.C.2d 623 (June 14, 1989) (*"Negotiated Rates"*). In *Negotiated Rates,* the Commission stated:

> [W]e have decided . . . to reopen . . . [*MC–177*] to clarify: that we have primary jurisdiction over unreasonable practice issues; that our unreasonable practice determinations are thus binding and dispositive of the issue of the maximum reasonable compensation the carrier may receive for the transportation involved; and that our determinations are subject to judicial review only to determine that they are not arbitrary or capricious. Furthermore, we will modify our policy in this area to the extent that we will now entertain unreasonable practice claims based on negotiated rates without awaiting a court referral.

5 I.C.C.2d at 624. The ICC's clarification of *MC–177* in *Negotiated Rates* further bolsters the

Based upon the foregoing, the Court hereby rules as follows:

(1) The Trustee's Motion to Dismiss the counterclaims of the defendants herein is hereby DENIED;

(2) These proceedings are hereby REFERRED to the Interstate Commerce Commission for determination of whether the Trustee's collection of undercharges would constitute an unreasonable practice under the circumstances presented here; and

(3) These adversary proceedings, are hereby STAYED pending a determination by the Interstate Commerce Commission.

IT IS SO ORDERED.

Court's conclusion that referral of these adversary proceedings is appropriate. However, the Court expresses no opinion regarding whether

an ICC reasonableness determination actually will be binding upon a federal court.